507 So.2d 596 (1987)
PUBLIC HEALTH TRUST OF DADE COUNTY, d/b/a Jackson Memorial Hospital, Petitioner,
v.
Gregoria VALCIN, et al., Respondents.
No. 67673.
Supreme Court of Florida.
April 30, 1987.
*597 Miller Walton and George W. Chesrow of Walton, Lantaff, Schroeder & Carson, Miami, for petitioner.
William A. Bell, Tallahassee, for intervenor/petitioner, Florida Hosp. Ass'n.
Arnold R. Ginsberg of Horton, Perse & Ginsberg, and Virgin & Kray, P.A., Miami, for respondents.
ADKINS (Ret.). Justice.
In reversing in part the summary judgment resolving all issues in a medical malpractice action in favor of defendant/petitioner Public Health Trust of Dade County, d/b/a Jackson Memorial Hospital (Hospital) and against plaintiff/respondent Gregoria Valcin (Valcin), the district court adopted a scheme of evidentiary presumptions to be utilized when the absence of surgical operative notes impairs the plaintiff's ability to establish his case. Valcin v. Public Health Trust, 473 So.2d 1297 (Fla. 3d DCA 1984). Because the scheme involved an irrebuttable presumption, found violative of due process in Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla. 1976), we find jurisdiction based on conflict. Art. V, § 3(b)(3), Fla. Const. We approve in part and quash in part the decision under review.
A year and one-half after undergoing tubal ligation surgery in an effort to be sterilized, respondent Valcin suffered a ruptured ectopic pregnancy which nearly caused her death. She, joined by her husband, sued petitioner Hospital on the grounds that its agents had 1) breached an alleged warranty as to the effectiveness of the operation, 2) failed to obtain a truly informed consent, and 3) negligently performed the operation. While the district court found the summary judgment on the first claim proper in the absence of the written guarantee required under section 725.01, Florida Statutes (1981), it found genuine issues of material fact requiring jury resolution in the latter two claims.
First, the district court found the alleged oral warranties sufficient to raise a question of fraud vitiating an informed consent under the statute then in effect, section 768.46(4)(a), Florida Statutes (1981). The statute provided as follows:
A consent which is evidenced in writing and meets the requirements of subsection (3) shall, if validly signed by the patient or another authorized person, be conclusively presumed to be a valid consent. This presumption may be rebutted if there was a fraudulent misrepresentation of a material fact in obtaining the signature.
The court found the existence of an informed consent additionally called into question by Valcin's statement that she had never been informed of the specific risk of an ectopic pregnancy.
Second, the court reversed the summary judgment on the claim of negligent performance of the operation, which the trial court had apparently granted on the basis that a deposition of Valcin's sole medical witness "conclusively showed that he could not testify that the sterilization procedure departed from acceptable medical standards, or that any such departure proximately caused Valcin's subsequent ectopic pregnancy." 473 So.2d at 1303.
While noting the general rule that it is the plaintiff's burden to establish medical malpractice, Atkins v. Humes, 110 So.2d 663 (Fla. 1959), the district court found that the lack of an "operative report" by the surgeon in Valcin's file impaired the expert's ability to determine whether the operation had been performed with due care. Some question exists in the instant case as to the existence or adequacy of an operative note in the case. Although such a note "normally records the preoperative diagnosis, a detailed record of his [the surgeon's] procedure (cut by cut and stitch by stitch *598 almost), the operative findings, and the condition in which the patient was transferred to the recovery ward ... following surgery," J. McQuade, Medical Practice for Trial Lawyers § 2-20 (2d ed. 1985), the district court found that the failure of the instant note to do any of these things hindered the plaintiff's ability to proceed.
Finding a statutory duty to maintain such records, and holding that "where evidence peculiarly within the knowledge of the adversary is, as here, not made available to the party who has the burden of proof, other rules must be fashioned," 473 So.2d at 1305 (footnote omitted), the district court created the following rules. If the hospital is unable to produce the records, a burden is preliminarily placed upon it to prove by the greater weight of the evidence that "the records are not missing due to an intentional or deliberate act or omission" of the hospital or its employees. Id. at 1306. If the fact-finder determines that the hospital has met this burden, "the fact that the record is missing will merely raise a presumption that the surgical procedure was negligently performed, which presumption may be rebutted by the hospital by the greater weight of the evidence." Id. However, if the employee doctor is found to have deliberately omitted making the report, or the hospital is found to have deliberately failed to maintain it, "then a conclusive, irrebuttable presumption that the surgical procedure was negligently performed will arise, and judgment as to liability shall be entered in favor of Valcin." Id.
We agree that material issues of fact have been raised in regard to the latter two claims, necessitating resolution of those issues by trial. Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501 (Fla. 1982). We must, however, quash in part the district court's holdings as to the law to be applied in resolving these issues upon remand.
We turn first to the issue of informed consent. Prior to the operation Valcin signed two consent forms, the first indicating the general hazards of surgery and reciting that "surgery is not an exact science, and I acknowledge that no guarantees have been made to me concerning the results of the operation or procedure." The second form, a "Consent for Authorization for Sterilization," stated that "It has been explained to me by Doctor Sharpe that this operation [a bilateral tubal ligation] is intended to result in sterility, but this is not guaranteed."
In spite of these signed consent forms, the district court properly found material questions of fact raised by Valcin's allegations of oral warranties as to the effectiveness of the operation, Morganstine v. Rosomoff, 407 So.2d 941 (Fla. 3d DCA 1981), and her claim, unrefuted by the language of the signed consent forms, that she had not been informed of the particular risk of an ectopic pregnancy. Thomas v. Berrios, 348 So.2d 905 (Fla. 2d DCA 1977). We agree that Valcin's allegations were sufficient to withstand a motion for summary judgment, at least in the absence of the defendant's having conclusively established either that an ectopic pregnancy was not a "substantial risk[] ... inherent in the proposed treatment," section 768.46(3)(a)2, Florida Statutes (1985), or that failure to so inform the patient "was in accordance with an accepted standard of medical practice... in the same or similar medical community." § 768.46(3)(a)1.
Upon remand, Valcin will be required to establish through expert testimony the information which should have been conveyed to her under the circumstances. Valcin, 473 So.2d at 1302, citing Ditlow v. Kaplan, 181 So.2d 226 (Fla. 3d DCA 1965); Ritz v. Florida Patient's Compensation Fund, 436 So.2d 987 (Fla. 5th DCA 1983), review denied, 450 So.2d 488 (Fla. 1984).
We note, too, that the relevant statute as presently amended will control the resolution of the issue of informed consent at trial. Section 768.46(4)(a), Florida Statutes (1985), now provides that:
A consent which is evidenced in writing and meets the requirements of subsection (3) shall, if validly signed by the patient or another authorized person, raise a rebuttable presumption of a valid consent.
*599 (Emphasis supplied.) As we affirm the general principle that "an appellate court, in reviewing a judgment on direct appeal, will dispose of the case according to the law prevailing at the time of the appellate disposition," State v. Hospital District of Hardee County, 201 So.2d 69 (Fla. 1967); Florida East Coast Railway v. Rouse, 178 So.2d 882, 883 (Fla. 3d DCA 1965), quashed on other grounds, 194 So.2d 260 (Fla. 1966), we note that no conclusive presumption of valid consent, rebuttable only upon a showing of fraud, will apply to the case. The alleged oral warranties, of course, if accepted by the jury may properly rebut a finding of valid informed consent.
We next turn to the issue of the negligent performance of the operation and the related presumptions involving the absence of surgical operative notes. While we share the district court's concerns as to fairness when "evidence peculiarly within the knowledge of the adversary is ... not made available to the party which has the burden of proof," 473 So.2d at 1305, we find that the rules fashioned by that court sweep wider than necessary. For reasons more fully expressed below, we strike down the conclusive presumption establishing liability when the records are shown to be missing due to the deliberate acts or omissions of the hospital or employee doctor. We adopt, with some modification, the shifting of the burden of producing evidence when essential records are found to be either missing or inadequate through the defendant's negligence.
We find the conclusive presumption invalid for two reasons. First, it violates due process in its failure to provide the adverse party any opportunity to rebut the presumption of negligence. Straughn v. K & K Land Management, Inc., 326 So.2d 421 (Fla. 1976); Bass v. General Development Corp., 374 So.2d 479 (Fla. 1979). Second, such a drastic "short circuiting" of the jurors' function is simply unnecessary. In those extremely rare instances that the evidence establishes an intentional interference with a party's access to critical medical records, a wide range of sanctions is available to the trial court under Florida Rule of Civil Procedure 1.380(b)(2). See, e.g., Mercer v. Raine, 443 So.2d 944 (Fla. 1983). Further, a jury could well infer from such a finding that the records would have contained indications of negligence. See § 90.301(3), Fla. Stat. (1985); J. McQuade, Medical Practice for Trial Lawyers § 2-20 (2d ed. 1985) ("Rarely, and usually only in malpractice cases, the findings [in a surgical note] are inadequately described or omitted altogether. This is a suspicious circumstance.")
Although we approve the district court's adoption of the rebuttable presumption, applicable when essential medical records are unavailable due to the adverse parties' negligence, we must clarify its application in certain respects. We first stress the limited function of the presumption. The absence of a surgical note will not necessarily bear on the issues in a malpractice action based solely on, for example, failure to obtain an informed consent or failure to properly diagnose an illness. It should apply only when necessary to serve the purposes of justice. In other words, a plaintiff must first establish to the satisfaction of the court that the absence of the records hinders his ability to establish a prima facie case. In Patrick v. Sedwick, 391 P.2d 453, 457 (Alaska 1964), for example, the Alaska Supreme Court noted that "it was incumbent upon the appellee surgeon to have described accurately and fully in his report of the operation everything of consequence that he did and which his trained eye observed during the operation ... [i]f these requirements had been met the report would ... more likely ... have supplied sufficient facts to have permitted expert witnesses to testify on the question of negligence."
We stress this point in order to avoid the potential problems involved in confusing the absence of the records with the true issues at trial. Negligence in failing to make or maintain medical records does not necessarily bear at all on the question of whether the medical procedure involved has been conducted negligently. The presumption, shifting the burden of producing the evidence, is given life only to equalize the parties' respective positions in regard *600 to the evidence and to allow the plaintiff to proceed.
Our shifting of burdens of producing evidence in the context of medical malpractice actions is not unprecedented. Several of the policies underlying our decision of Marrero v. Goldsmith, 486 So.2d 530 (Fla. 1986), in which we shifted the burden of "initial explanation" to the defendant doctor when the faultless plaintiff had been injured while unconscious during surgery, are present in this case. As in Marrero, the doctor's exclusive knowledge as to the medical procedures involved, the relative ignorance of the plaintiff, and the lack of direct evidence of negligence in the absence of complete medical records compel a shifting of the burden of producing evidence as a matter of public policy.
At this point, we should clarify the type of rebuttable presumption necessitated under this decision. The instant problem should be resolved either by applying a shift in the burden of producing evidence, section 90.302(1), Florida Statutes (1985), or a shift in the burden of proof. § 90.302(2), Fla. Stat. (1985). While the distinction sounds merely technical, it is not. In the former, as applied to this case, the hospital would bear the initial burden of going forward with the evidence establishing its nonnegligence. If it met this burden by the greater weight of the evidence, the presumption would vanish, requiring resolution of the issues as in a typical case. See Gulle v. Boggs, 174 So.2d 26 (Fla. 1965); C. Ehrhardt, Florida Evidence § 302.1 (2d ed. 1984). The jury is never told of the presumption.
In contrast, once the burden of proof is shifted under section 90.302(2), the presumption remains in effect even after the party to whom it has been shifted introduces evidence tending to disprove the presumed fact, and "the jury must decide whether the evidence introduced is sufficient to meet the burden of proving that the presumed fact did not exist." Ehrhardt at § 302.2, citing Caldwell v. Division of Retirement, 372 So.2d 438 (Fla. 1979).
A vanishing presumption will not assist a plaintiff in proving his case. If the plaintiff is in fact sufficiently "hindered" by the absence of an operative note, odds are that the defendant's production of some evidence of nonnegligence will not place the plaintiff in a better position. Testimony based on the selective recollections of the surgeon and his staff would be considered "substantial" enough to "burst the bubble," thus keeping the presumption from the jury. See Gulle v. Boggs, 174 So.2d 26 (Fla. 1965); see also Baughman v. Vann, 390 So.2d 750 (Fla. 5th DCA 1980); Brethauer v. Brassell, 347 So.2d 656 (Fla. 4th DCA 1977). Plaintiff could rarely prove negligence by a preponderance of the evidence when the presumption has given him nothing more than the self-serving testimony of the defendant.
Finally, in the usual case where a vanishing presumption is employed to facilitate the determination of an action, the underlying facts giving rise to the presumption also form the basis for a logical inference of the fact presumed. Such a logical inference remains after a vanishing presumption disappears only where the underlying facts are sufficiently connected to and thus probative of the inferred fact. See Ehrhardt at § 302.1. In a case such as this, however suspicious the absence of surgical records may appear to a jury, this fact alone would seem insufficient to form the basis for a logical inference that the operation was performed negligently. Thus, in most cases such as the one at bar, where there is no other evidence of negligence, once credible evidence of nonnegligence is introduced, a directed verdict for the defendant would likely follow. See Ehrhardt at § 302.1.
The second type of rebuttable presumption, as recognized in section 90.302(2), Florida Statutes, affects the burden of proof, shifting the burden to the party against whom the presumption operates to prove the nonexistence of the fact presumed. "When evidence rebutting such a presumption is introduced, the presumption does not automatically disappear. It is not overcome until the trier of fact believes that the presumed fact has been overcome by whatever degree of persuasion is required *601 by the substantive law of the case." Caldwell, 372 So.2d at 440. Rebuttable presumptions which shift the burden of proof are "expressions of social policy," rather than mere procedural devices employed "to facilitate the determination of the particular action." Id. See also, §§ 90.303 and 90.304, Fla. Stat. (1985).
A section 90.302(2) presumption shifts the burden of proof, ensuring that the issue of negligence goes to the jury. This interpretation appears to best implement public policy that adequate operative notes be kept.
We must next explore the district court's observations as to the hospital's direct rather than vicarious liability for a surgeon's failure to create an operative note. While a hospital is indeed statutorily required to maintain medical records including, under Florida Administrative Code chapter 10D-28.59(3), "medical and surgical treatment notes and reports," see 473 So.2d at 1305, n. 7, only surgeons may in fact prepare such operative notes, and generally such surgeons are only independent contractors granted the privilege of practicing in the hospitals rather than employees. Vicarious liability does not therefore necessarily attach to the hospital for the doctors' acts or omissions. Pinillos v. Cedars of Lebanon Hospital Corp., 403 So.2d 365 (Fla. 1981); Wilson v. Lee Memorial Hospital, 65 So.2d 40 (Fla. 1953); Reed v. Good Samaritan Hospital Association, Inc., 453 So.2d 229 (Fla. 4th DCA 1984).
The facts underlying the district court's broad observations as to the hospital's direct liability reflect an atypical situation. That party was left as the sole defendant in the case to answer for the doctor's carelessness because the operating doctor, an agent/employee of the public hospital, was properly dismissed under the immunity provisions of section 768.28(9)(a), Florida Statutes (Supp. 1980). In this clear employer/employee context, the hospital may properly be held liable for the significant omission of its employee doctors committed within the scope of their employment.
Generally, however, a hospital may not fairly be held liable for a plaintiff's entire damages solely based on the omissions of an independent contractor merely granted practicing privileges in the hospital. Because the relationship between hospital and doctor is often unclear and raises a question for the jury, though, Irving v. Doctors Hospital of Lake Worth, Inc., 415 So.2d 55 (Fla. 4th DCA), review denied, 422 So.2d 842 (Fla. 1982); Garcia v. Tarrio, 380 So.2d 1068 (Fla. 3d DCA 1980), every hospital would do well to ensure that a patient's medical records contain a sufficient operative note.
We note, too, that in practice no such unfairly imposed "direct liability" will be ordinarily found; if the doctor is found to be an independent contractor, the hospital may not be found liable for any negligence on his part, and in fact will not properly be a party in the case. We make these observations in order to ensure that no hospital not otherwise properly involved as a defendant in a case is made so based on its purported "direct liability" for its failure to ensure the existence or adequacy of operative notes.
As a final note, we point out that upon remand the trial court should consider the existence or adequacy of any operative note (which it has not yet done in this case), and determine whether or not the absence of an adequate note sufficiently hinders plaintiff's ability to proceed, thus shifting the burden of producing evidence on the merits of the claim. Apparently, conflicting evidence exists as to both of these points in the pretrial record.
We therefore approve in part and quash in part the decision here under review, and remand for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.
McDONALD, C.J., concurs in result only.