552 So.2d 926 (1989)
Betty JONES and Department of Health and Rehabilitative Services, Appellants,
v.
Mack CRAWFORD, Appellee.
No. 88-2803.
District Court of Appeal of Florida, First District.
July 13, 1989.
Rehearing Denied August 23, 1989.
Joseph R. Boyd and William H. Branch of Boyd & Branch, P.A., Tallahassee, and Chriss Walker, Dept. of Health and Rehabilitative Services, Tallahassee, for appellants.
Steven L. Seliger, Quincy, for appellee.
BOOTH, Judge.
This cause is before us on appeal of an order in a proceeding under Chapter 742, Florida Statutes, holding that appellee was not the father of appellant's child. Section 742.12, Florida Statutes, adopted effective October 1, 1986,[1] admittedly applicable in the proceedings below, provides, in pertinent part, as follows:
The results of the Human Leukocyte Antigen tests or other scientific tests, together with the opinions and conclusions of the test laboratory, shall be filed with the court. Test results are admissible in evidence and should be weighed along with other evidence of the paternity of the alleged father unless the statistical *927 probability of paternity equals or exceeds 95 percent. A statistical probability of paternity of 95 percent or more creates a rebuttable presumption, as defined by s. 90.304, that the alleged father is the biological father of the child. If a party fails to rebut the presumption of paternity which arose from the statistical probability of paternity of 95 percent or more, the court may enter a summary judgment of paternity. If the test results show the alleged father cannot be the biological father, the case shall be dismissed with prejudice.
The human leukocyte antigen (HLA) test performed on appellee showed a 98.23-percent probability of paternity, and test results and conclusions of the laboratory were admitted into evidence. Other evidence consisted of the testimony of appellant that during the period her daughter could have been conceived, she was having sexual intercourse with appellee and with another man, whom she ultimately married more than a year after the child was born. She testified that the other man could not have been the father because she always used "protection" with him.[2] According to appellant, appellee frequently picked her up at her mother's house, and the two drove off together and had intercourse. She also testified that appellee frequently bought things for the child. Appellant's mother testified that appellee often gave both her and appellant money.
Appellee denied ever having sexual intercourse with appellant and further testified that he never even dated her. He admitted giving appellant rides but claimed he did that for many people. He also admitted dropping off various items, but testified that these were normal deliveries from his store and that the items were either paid for or still owed for.
The trial court recognized the presumption created by Section 742.12(1) but found that appellant's credibility was questionable and that appellant received a military allotment from the other man while he was in the service.[3] On these findings, the court ruled that appellee had rebutted the statutory presumption. We reverse since the trial court failed to give due weight to the statutory presumption of paternity on proof of HLA test results exceeding a 95-percent probability.
Section 742.12(1), Florida Statutes (1987), provides that where HLA test results of less than a 95-percent probability of paternity are introduced, the trial court shall weigh the test results with all other evidence. However, when HLA test results indicate a probability of paternity equal to or greater than 95 percent, a rebuttable presumption under Section 90.304, Florida Statutes (1987), arises. In Caldwell v. Division of Retirement, Florida Department of Administration, 372 So.2d 438 (Fla. 1979), the Supreme Court held that Section 90.304, Florida Statutes, presumptions impose on the party against whom the presumption operates, the burden of proof concerning the nonexistence of the presumed fact. The court explained:
When evidence rebutting such a presumption is introduced, the presumption does not automatically disappear. It is not overcome until the trier of fact believes that the presumed fact has been overcome by whatever degree of persuasion is required by the substantive law of the case. This may be by a preponderance of the evidence or by clear and convincing evidence, as the case may be... . The statutory presumption is the expression of a strong public policy which does not vanish when the opposing party submits evidence. Where the evidence *928 is conflicting, the quantum of proof is balanced and the presumption should prevail. ... The presumption would be meaningless if the only evidence necessary to overcome it is evidence that there has been no specific occupationally related event that caused the disease. To rebut the statutory presumption, it is necessary that the Commission show that the disease causing disability or death was caused by a specific, non-work related event or exposure. (emphasis added)
Caldwell involved a statutory presumption that when fire fighters suffered particular illnesses, those illnesses were presumed to be job-related and therefore compensable. The court held that to overcome this presumption, the employer had to show that the disease was caused by a specific, nonwork-related event or exposure. The court specifically ruled that simply submitting evidence creating a conflict did not rebut the presumption. 372 So.2d at 441. See also Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla. 1987).
In the instant case, appellee failed to meet the burden of overcoming the presumption. Appellee did not demonstrate that the HLA test results were erroneous, did not avail himself of the procedures for retesting permitted under Section 742.12(2), Florida Statutes (1987), and did not submit evidence tending to prove that, for any reason (such as sterility or total lack of access), he could not have been the father. Absent such evidence, appellee's bare denial and testimony that someone other than appellee had sexual relations with the mother did not overcome the presumption established by the HLA test results and Section 742.12(1), Florida Statutes (1987).
Accordingly, we reverse and remand for further proceedings in accordance with this opinion.
WIGGINTON and BARFIELD, JJ., concur.
NOTES
[1] Ch. 86-220, § 154, Laws of Florida (1986).
[2] The other man did not testify at trial, and no paternity test was performed on him. The child's birth certificate was not introduced into evidence.
[3] Appellant testified that for some six months, she received a monetary payment from the man whom she subsequently married but that it was not for the child in question. She testified that she did not receive a military check and that she did not know what an allotment check was. Later she testified that she was unsure what kind of check she received. Evidence was introduced that military allotment checks are issued pursuant to administrative or court order to pay child support arrearages. That was the extent of the proof offered on this point, and it does not support a finding that a military allotment check was received for the child, nor a determination that someone other than appellant was the natural father.