561 So.2d 677 (1990)
ROCKWELL INTERNATIONAL CORPORATION, Appellant.
v.
Gregorie MENZIES and Ziol Menzies, His Wife, Appellees.
No. 88-3091.
District Court of Appeal of Florida, Third District.
May 15, 1990.
Kubicki, Bradley, Draper, Gallagher & McGrane, and Daniels & Hicks, and Sam Daniels, and Patrice A. Talisman, Miami, for appellant.
Grover, Ciment, Weinstein, Stauber & Friedman, Miami Beach, and Cooper, Wolfe & Bolotin, and Marc Cooper, and Joan M. Bolotin, Miami, for appellees.
*678 Before BASKIN, FERGUSON and GERSTEN, JJ.
GERSTEN, Judge.
Appellant, Rockwell International Corporation (Rockwell), appeals a final judgment in favor of appellee, Gregorie Menzies, on Menzies's product liability action against Rockwell. After striking Rockwell's pleadings and entering a default order against Rockwell on liability, the trial court held a jury trial on damages. We affirm.
The facts are unique, and thus, we need pay attention to minutiae. In 1979, Menzies purchased a Rockwell manufactured table saw which was sold without a motor. The box containing the Rockwell table saw had an instruction manual and an assembly package with nuts and bolts for attaching a motor. Menzies obtained a motor made by another company, Dayton, and had the Dayton motor installed on the Rockwell saw.
In 1979, while Menzies was using the saw, it jammed. Menzies sought to determine the cause of the jam. He lowered the saw blade below the table top, turned the saw on, and, while looking from under the table at the saw, placed his hand on the table top. The blade rose and injured Menzies's hand.
In 1980, Menzies sued Rockwell for negligence and strict liability. Menzies's causal theory of the accident was that the saw blade improperly rose due to a design defect. Rockwell's causal theory of the accident was that the saw blade rose because Menzies had installed the wrong motor on the saw.
During the five to six years of litigation preceding the trial of the case, the parties were each provided access to the saw for inspection purposes. Rockwell's inspection of the saw was specifically restricted by a court order which provided that the saw "not be altered nor destructed [sic] in any way." Eventually, the saw was returned to Menzies.
Prior to trial in 1986, Rockwell again sought access to the saw. Menzies agreed to permit Rockwell to inspect the saw, providing Rockwell "not alter or experiment with, the saw." Rockwell confirmed by letter that the saw would have "no alterations done to it" nor would "it be destructed [sic] in any way."
Menzies's counsel was initially in attendance at Rockwell's inspection of the saw. Rockwell, however, refused to perform the inspection with counsel for Menzies in attendance. After Menzies's counsel left, Rockwell proceeded with its "inspection" of the saw.
First, Rockwell's experts ran the saw with the Dayton motor. The blade rose. Then they tried to remove the Dayton motor, but two of the three bolts which held it would not turn. One of the experts acquired a hammer and chisel and hacked off the two bolts.
The experts then installed a Rockwell motor on the table saw using two replacement bolts and the one original bolt. When Rockwell's experts ran the saw, the blade did not rise.
The experts put the Dayton motor back on the saw using the two replacement bolts and the one original bolt. They ran the saw and the blade did not rise. When the experts loosened the bolts, however, the blade rose. Rockwell's experts finished their "inspection," but failed to retain the two original hacked off bolts.
Shortly after this "inspection", Menzies deposed Rockwell's experts and learned that Rockwell's theory of the cause of the accident had changed. Now Rockwell argued that Menzies's use of defective bolts to fasten the motor to the mounting caused the accident and that Rockwell did not supply these bolts.
Based on Rockwell's intentional destruction and loss of the two bolts, Menzies moved to strike Rockwell's pleadings. Denying the requested relief, the trial court ruled that: (1) Rockwell was prohibited from offering testimony concerning any connection between the accident and the bolts; and, (2) Rockwell could offer testimony concerning the condition of the attachment of the motor to the rest of the apparatus. The cause proceeded to trial.
*679 Based upon the trial court's pre-trial rulings, Menzies presented his case before the jury. The sword of Menzies's case was expert testimony that a design defect caused the blade to rise on its own. Menzies sheathed his sword, and rested.
Rockwell then presented expert testimony that the blade rose because of machine vibration. The expert explained the machine vibrated not because of a design defect but because it was not firmly secured to the motor plate.
Rockwell's expert further stated that the reason the motor was not firmly secured was due to something the customer was responsible for at the time of the motor's installation. Menzies, finding himself on a precipice, sought direction from the trial court on how to cross examine Rockwell's expert without opening the door to the excluded testimony concerning the bolts.
At this juncture, the trial court found that its previous order had placed Menzies in an untenable position. The court also found that Menzies could not contradict Rockwell's expert testimony about the allegedly loose attachment and machine vibration, without the bolts that Rockwell had hacked off and had lost.
As an alternative to its previous order prohibiting testimony on the bolts, the trial court suggested that Rockwell's expert be precluded from testifying. Rockwell rejected this proposal. The court then declared a mistrial and ordered a hearing on a motion for sanctions.
Prior to the hearing on sanctions, the trial judge recused himself. Judge Sidney Shapiro was assigned to the case and held the sanction hearing. Judge Shapiro, finding no bad faith, entered an order striking Rockwell's pleadings and entered a default against Rockwell on liability.
The case proceeded to a new trial on damages before Judge Samuel I. Silver. At the beginning of trial, Rockwell asked whether it was entitled to litigate the question of comparative negligence. Responding that he could not clarify Judge Shapiro's order, Judge Silver offered to recess the trial so that Rockwell could seek clarification from Judge Shapiro. Judge Silver explained that otherwise, he would "take the pleadings at face value and proceed on the issue of damages only." Rockwell rejected Judge Silver's offer and declined to seek clarification from Judge Shapiro. The trial was held and the jury returned a verdict awarding damages to Menzies. The trial court denied Rockwell's motion for new trial, and this appeal followed.
Rockwell first contends the trial court erred in striking its pleadings and entering a default on liability because there was no evidence that Rockwell acted in bad faith. True, the trial court found that Rockwell did not act in bad faith by intentionally destroying and losing the two bolts. This absence of bad faith, however, did not preclude the trial court from imposing these sanctions here.
This court has recognized that drastic sanctions, including a default, are appropriate when a defendant who has been ordered not to destroy evidence does, in fact, alter or destroy critical physical evidence, and when the plaintiff has demonstrated an inability to proceed without such evidence. DePuy, Inc. v. Eckes, 427 So.2d 306 (Fla. 3d DCA 1983). In so ruling, this court concluded that whether the defendant destroyed the evidence in "bad faith or accidentally is irrelevant." DePuy, Inc. v. Eckes, 427 So.2d at 308.
We are cognizant that evidence cannot always be clothed in velvet and kept in a pristine condition. We also recognize Rockwell's destruction and loss of critical physical evidence  the two bolts  in spite of a court order. Further, Rockwell sent a letter assuring that there would be no alteration or destruction of the evidence. In today's product liability trial, we frequently rely heavily on Maxwellian often hypertechnical, expert opinions. Thus, small, seemingly insignificant items, like simple bolts, can become large factors in the outcome of a trial.
Yet, without these bolts, Menzies demonstrated a clear inability to proceed, at trial. Menzies could not, and indeed, never will, rebut the testimony of Rockwell's expert that the saw blade rose because the customer *680 failed to firmly secure the motor to the motor plate. In accordance with DePuy, we find the question of Rockwell's bad faith irrelevant.
Rockwell next argues that the trial court erred in striking its pleadings and entering a default on liability, because the sanctions imposed were not related to the degree of prejudice sustained by Menzies. Rule 1.380(b)(2)(C) of the Florida Rules of Civil Procedure provides for the imposition of sanctions for failure to comply with discovery orders. Cases interpreting this provision have established that the "sanctions should be commensurate with the offense and the ultimate sanction should be visited upon a party only under exceptional circumstances." DePuy, Inc. v. Eckes, 427 So.2d at 307.
In this case, Rockwell's loss of the bolts left Menzies with no possible way of challenging the conclusion of Rockwell's expert. Rockwell's intentional destruction and subsequent loss of the bolts made Rockwell's defense to Menzies's prima facie case unassailable.
An analysis of DePuy, Inc. v. Eckes, 427 So.2d at 306, is insightful and instructive on sanctions. In DePuy, the plaintiff brought suit for an injury allegedly caused by the breakage of a prosthesis. The prosthesis was turned over to the defendants under an agreed order not to destroy the fracture site. The defendants lost the fracture site. The plaintiff's expert testified that he could not render an opinion without an actual examination of the fracture site. Having struck the defendants' answer and affirmative defenses, the trial court entered a default on liability against the defendants.
This court affirmed the order appealed except insofar as it struck the defendants' affirmative defenses. We held that defendants, having lost the prosthesis, were "now accountable for the ramifications of their act." DePuy, Inc. v. Eckes, 427 So.2d at 308. The same reasoning applies in this case. Rockwell, having lost the two bolts, is now accountable for the ramifications of its act.
Furthermore, Rockwell contends that the sanctions imposed were too drastic because they precluded Rockwell from presentation of evidence on its comparative negligence defense. This argument is without merit because Rockwell invited the error on this point. City of Coral Gables v. Levison, 220 So.2d 430 (Fla. 3d DCA 1969); Hevia v. Palm Terrace Fruit Company, 119 So.2d 795 (Fla. 2d DCA 1960); see generally, Bould v. Touchette, 349 So.2d 1181 (Fla. 1977); Leisure Group, Inc. v. Williams, 351 So.2d 374 (Fla. 2d DCA 1977).
The record demonstrates that Judge Silver offered to recess the proceedings to allow Rockwell to obtain clarification from the judge who entered the default order as to whether its comparative negligence defense could be tried. Rockwell rejected Judge Silver's offer. On appeal, Rockwell cannot now complain of an error which it easily could have cured.
We therefore conclude the degree of sanctions imposed against Rockwell were related to the degree of prejudice sustained by Menzies. Therefore, the trial court acted within its discretion by imposing the sanctions for Rockwell's intentional destruction and loss of critical evidence. DePuy, Inc. v. Eckes, 427 So.2d at 307-308; see e.g., Mercer v. Raine, 443 So.2d 944 (Fla. 1984); Royal Netherlands Steamship Company v. Quinto de Garcia, 489 So.2d 128 (Fla. 3d DCA), review denied, 496 So.2d 143 (Fla. 1986), cert. denied, 479 U.S. 1090, 107 S.Ct. 1299, 94 L.Ed.2d 155 (1987); Morales v. Perez, 445 So.2d 393 (Fla. 3d DCA), dismissed, 453 So.2d 44 (Fla. 1984); A.H. Robins Company, Inc. v. Devereaux, 415 So.2d 30 (Fla. 3d DCA 1982), review denied, 426 So.2d 25 (Fla. 1983).
In upholding the sanctions imposed, we note that the trial court's attempt at fashioning a less harsh sanction failed. Further, although the trial court could have sanctioned Rockwell by precluding it from offering expert testimony, the impact would have been the same as the sanctions that were imposed. It would have left Menzies's prima facie case unrebutted, *681 mandating a directed verdict on liability against Rockwell.
Finally, the holding of the Florida Supreme Court in Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla. 1987), does not warrant a contrary ruling by this court. In Valcin, the court held that the absence of medical records, in a plaintiff's medical malpractice action, did not create a conclusive presumption of negligence; but rather, created a rebuttable presumption of negligence. Valcin, 507 So.2d at 599-601.
Valcin involved the defendant's failure to maintain secondary evidence, that is, medical records. But Valcin did not involve the destruction and loss of primary physical evidence as in this case. In approving a rebuttable presumption of negligence in Valcin, the court stated, "[n]egligence in failing to make or maintain medical records does not necessarily bear at all on the question of whether the medical procedure involved has been conducted negligently." Public Health Trust of Dade County v. Valcin, 507 So.2d at 599. In this case, Rockwell's destruction and loss of the two bolts does necessarily bear on the crucial question of the cause of Menzies's injuries.
Based on the foregoing, the final judgment appealed is affirmed.