Connolly, J.
This case involves a medical malpractice claim brought by the plaintiffs, Dylan Keene, through his parents and next friends Kathleen and Robert Keene, against the defendants, Brigham & Women’s Hospital, Inc., Harvard Community Health Plan and James R. Cooley, M.D. Through the course of discovery it was discovered that one or more records pertaining to Dylan Keene’s care were missing from his medical records. On May 3, 1996, the court ordered Brigham & Women’s Hospital to resurrect the missing records or, in the alternative, determine what might substitute for those records. The plaintiffs now move this court, pursuant to Mass.R.Civ.P. 37(b)(2)(C), to default Brigham & Women’s Hospital and strike their charitable immunity affirmative defense for failure to comply with the court’s order. As grounds for their motion, the plaintiffs contend that without the aforementioned records the plaintiffs cannot prove the alleged negligence nor determine which doctors or nurses were responsible for Dylan Keene’s care.
BACKGROUND
Dylan Keene (Dylan), was born at Brigham & Women’s Hospital (BWH) at or about 1:07 a.m. on May 15, 1986. Shortly after his birth, Dylan exhibited signs of respiratory distress. Accordingly, blood tests were taken and showed Beta-Hemolytic Streptococci Group B. By twenty-four hours of age, Dylan was in septic shock and by twenty-six hours of age he began having seizures. Subsequent EEGs, CTimaging, and physical examination showed severe brain damage. It was later determined that Dylan contracted meningitis which allegedly resulted in severe developmental problems.
On May 12, 1995, Dylan’s parents, Kathleen .and Robert Keene (the plaintiffs), instituted this action on Dylan’s behalf against BWH, Harvard Community Health Plan (HCHP), Dr. Roger Hinkson (Dr. Hinkson), and Dr. Lesley Furlong (Dr. Furlong).[3]
Sometime after the litigation began, it was discovered that a record or records, ordinarily found within an infant’s set of medical records, was missing from Dylan’s file.[4] More specifically, the record or records missing pertain to the care and treatment that Dylan received approximately eighteen to twenty hours after his birth.[5]
Once it was determined that one or more of the records from Dylan’s file was missing, the focus of the litigation switched to the pediatric care given to Dylan during the period following his birth. As a result, the parties stipulated to the dismissal of Dr. Hinkson and Dr. Furlong in or about April of 1996. The plaintiffs then received leave to amend their complaint and add Dr. Cooley, a pediatrician, as a defendant.
In hopes of determining the names of Dylan’s caregivers after his birth, plaintiffs served a notice to take a deposition pursuant to Mass.R.Civ.P. 30(b)(6) on October 18, 1995, requesting the names, addresses, licenses, and board certifications of any doctor, nurse, or any other person involved in the care of Dylan on May 15-16, 1986. To date, the hospital can, at best, identify those persons working on May 15-16, 1986, but cannot identify the persons who had responsibility for Dylan’s care, and what care, if any, was rendered to him. All persons from whom discovery has been sought have indicated that they have no memory of Dylan or his care, since they do not have his medical records to refresh or jog their memories.
On December 15, 1995, the plaintiffs noticed a 30(b)(6) deposition at BWH for January 16, 1996. Schedule A of that deposition sought information as to the caregivers of Dylan between May 14-16, 1986.
On or about January 15, 1996, BWH filed a motion for a protective order concerning the plaintiffs notice of 30(b)(6) depositions. The motion for protective order was denied on February 23, 1996. Thereafter, on February 27, 1996, the plaintiffs again noticed the depositions from October of 1995 and December of 1995. The defendants then produced two witnesses, *474 Leanna Hatton and Loretta Kehoe, who were employed at the BWH in the Medical Records Services Department and who may have had knowledge concerning the identification of doctors and nurses involved in treating Dylan and his mother. The depositions of these two women, however, failed to identify the doctors and nurses involved in the critical time period.
In March 1996, BWH’s department began a search for the missing records by retrieving the medical records of every child born at BWH on May 14-16, 1986. This search resulted in the records of 83 children. These records were inspected, however, none contained the records of Dylan. The scope of the search was broadened to include every in-patient, both children and adults, discharged from BWH in 1986. That search also failed to uncover the location of the missing record or records.
On May 3, 1996, this court held a hearing on the plaintiffs’ April 12, 1996 motion for sanctions. The court ordered BWH to resurrect the missing records or, in the alternative, determine what might substitute for those missing records.
As a result of the unsuccessful attempt by the hospital to locate the records, coupled with the plaintiffs strong need for such information, the plaintiffs filed this motion for a default judgment against the hospital, and as a further sanction, have asked the court to take away the hospital’s defense of charitable immunity.
DISCUSSION
I
Entry of default judgments is committed to the sound discretion of the trial judge. Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 639, 641 (1986); Riley v. Davison Construction Co., 381 Mass. 432, 441 (1980); Greenleaf v. Massachusetts Bay Transp. Auth., 22 Mass.App.Ct. 426, 430-31 (1986). The reviewing court will not find that discretion abused “unless its exercise has been characterized by arbitrary determination, capricious disposition, whimsical thinking, or idiosyncratic choice.” Greenleaf v. Massachusetts Bay Transp. Auth., 22 Mass.App.Ct. at 429. The factors to be taken into consideration include “the relative clarity with which it appears that the judgment was unjust, the relative fault of the parties, and the balance to be struck." Id., citing Restatement (Second) of Judgments §74, comment g (1982). “The consideration to be balanced in deciding a default question for failure to make discovery are, on one hand, a concern about giving parties their day in court, and, on the other, not so blunting the rules that they may be ignored ‘with impunity.’ ” Id. at 429-30.
A.
Massachusetts Rules of Civil Procedure 37(b)(2)(B) and (C) provide that:
If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;
(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party!.]
Mass.R.Civ.P. 37 was amended in 1984. One of the most significant differences between the amended rule and the prior rule is that the latter required a willful failure to comply. ‘The purpose of the amendment was ‘to increase compliance with discoveiy orders, by making it easier for parties to achieve, and judges to award, sanctions for failure to comply with a discovery order.’ ” Roxse Homes Ltd. Partnership v. Roxse Homes Inc., 399 Mass. 401, 405-06 (1987), quoting Greenleaf v. Massachusetts Bay Transp. Auth., supra, 430-31 (1986).
In interpreting Fed. R. Civ. P. 37(b), which is similar to its Massachusetts counterpart, the United States Supreme Court has held that it is within the limits of due process to allow the sanction of default where failure to comply is not due to an inability to comply. See Societe Internationale Pour Participations Industrielles Et Commerciales S.A. v. Rogers, 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). See also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 640, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).
B.
Although small in number, a few Massachusetts courts have dealt with the issue of sanctioning a party by default for failure to obey a discovery order.[6] In Greenleaf v. Massachusetts Bay Transp. Auth., supra, the Appeals Court held that it was within the judge’s discretion to order that the MBTA be defaulted as to liability for its persistent failure to comply with discovery procedures. In that case, the plaintiff filed a tort action as a result of an accident in which the doors of an MBTA train closed on the plaintiff injuring her. The plaintiff filed interrogatories and a request for production of documents on the MBTA who objected to the production of documents as burdensome. Thereafter, the plaintiff was granted a motion to compel production of documents. The due date for production passed and no documents were produced by the MBTA. As a result, the plaintiff moved for a judgment by default on the issue of liability which was allowed. The MBTA then moved to vacate the default judgment which was *475 allowed and a date was set for production of the requested documents. After numerous failed attempts to obtain the documents, the court again entered a default judgment against the MBTA as to liability. The court reasoned that the MBTA was given numerous chances to comply with the discovery order but failed to do so. Id. at 430.
In Roxse Homes Ltd. Partnership v. Roxse Homes Inc., 399 Mass. 401 (1987), the Supreme Judicial Court upheld the lower court’s allowance of the plaintiffs motion for judgment for failure of the defendants to produce certain documents pursuant to a court order. The defendants argued that the order compelling production was defective and the documents sought were irrelevant. The Supreme Judicial Court, however, did not find these arguments persuasive and stated that these arguments could have been raised in the opposition to the motion to comply. Id. at 406. Moreover, the Court noted that “[t]he absence of prejudice to the partnership due to the noncompliance . . . [did] not make the sanction imposed unreasonable." Id. The court concluded that the defendant’s noncompliance was a clear violation of court orders. Id.
Finally, in Gos v. Brownstein, 403 Mass. 252 (1988), the Supreme Judicial Court vacated a lower court’s order to dismiss the plaintiffs medical malpractice action for her failure to attend a deposition. The plaintiff was a resident of Poland and while visiting her sister in Springfield, underwent a laparoscopic tubal ligation. She thereafter returned to Poland and became pregnant. She sued the doctor who then noticed her deposition. The plaintiff claimed that she was without funds to attend the deposition. The court took no action but gave the plaintiff two months to provide affidavits concerning her health and claims of indigency. A second hearing was held on the plaintiffs protective order and the judge allowed the motion with the proviso that the case was to be dismissed if the plaintiff was not deposed within six months. After several attempts to schedule the deposition, the judge dismissed the case.
The plaintiff argued on appeal that her failure to give her deposition was due to inability, not willfulness or bad faith. The Supreme Judicial Court noted that although “ [i]t is within the limits of due process to dismiss a complaint because of a petitioner’s noncompliance with a pretrial production order where the failure to comply is not due to an inability to comply. Id. at 255, citing Societe Internationale v. Rogers, supra, at 212. ”It must be kept in mind, however, that due process places limits ‘upon the power of courts, even in the aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause.’ “ Id., citing Societe Internationale v. Rogers, supra, at 209. ”In view of those constitutional constraints, the Supreme Court has construed Fed.R.Civ.P. 37(b) as not authorizing dismissal for noncompliance with a pretrial production order when it has been established that failure to comply has been due to an inability to comply and not wilfulness, bad faith, or any fault of petitioner." Id. at 256. The court distinguished Roxse Homes Ltd. Partnership v. Roxse Homes, Inc., supra, noting that although the sanction imposed in that case was default, there had been a clear violation of a court order with no attempt to comply or showing of inability to comply. Id. Therefore, it did not reach the issue of whether dismissal under Mass.R.Civ.P. 37(b) is permitted on a record with neither a finding nor a clear showing of wilfulness, bad faith or fault. Id. Accordingly, the Supreme Judicial Court vacated the dismissal and remanded the case back to the judge because the Court felt it necessary to know if the judge’s decision was based on a finding of willfulness, bad faith, or fault. Id.[7]
No evidence has been presented showing wilfulness or bad faith on the part of BWH in their failure to comply with the court’s order. The sanction of default, however, may be based on fault alone. United Artists Corp. v. La Cage Aux Folles, Inc., 771 F.2d 1265, 1270 (9th Cir. 1985). In that case, the client’s counsel was unable to comply with the discovery requests in part because of his inability to communicate with the client due to the client’s travel schedule. Id. No claim was made that counsel did not attempt to contact the client and the client did not show that he advised his counsel of his whereabouts so that he could be reached on reasonable notice. Id. Such conduct, according to the Ninth Circuit, indicated a lack of diligence in keeping abreast of the status of his case. Id. The Ninth Circuit therefore concluded that the dismissal sanction was warranted because the client was not blameless and that the failure to comply with the discovery request was partly the fault of the client. Id.
In Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062 (2d Cir. 1979), the Second Circuit found counsel’s negligence in failing to comply with a pretrial discovery order sufficient to satisfy the fault requirement of Societe Internationale. Id. at 1066-68. The Second Circuit concluded that failure to comply "where counsel clearly should have understood his duty to the court” constituted professional negligence of a degree amounting to fault. Id. 1068.[8]
Massachusetts General Laws Chapter 111, Section 70, provides, in relevant part, that:
Hospital or clinics subject to licensure by the department of public health or supported in whole or in part by the commonwealth, shall keep records of the treatment of the cases under their care including the medical history and nurses’ notes . . . Such records shall be in the custody of the hospital or clinic.
G.L.c. 111, §70 (1996 ed.). Moreover, 105 Code Mass. Regs. §133.370 (1995), requires BWH to maintain the *476 records for a thirty-year period. It is undeniable that the records sought by plaintiffs are records that the hospital had a statutory duty to keep and maintain. It, therefore, follows that BWH’s failure to maintain the records was a departure from its statutory duty. BWH’s inability to comply with the court’s discovery order resulted from this breach.
BWH’s degree of fault lies somewhere between Cine Forty-Second St. Theatre Corp. and United Artists Corp. Although BWH’s failure to maintain Dylan’s records does not rise to the level professional negligence displayed in Cine Forty-Second St. Theatre Corp., it is clearly more egregious than a client failing to keep counsel apprised of his travel schedule. In United Artists Corp., the client’s failure to keep abreast of the status of his case delayed and hindered the plaintiffs case. Here, BWH’s breach of their statutory duty to maintain Dylan’s medical records for thirty years left the plaintiff without the ability to prosecute their case. The fact that BWH has made a good faith effort to locate the missing record or records does not alter the fact that from Dylan’s entire medical record, the only record or records missing are those that may document the negligence of BWH or the hospital personnel responsible for Dylan’s treatment and care. Accordingly, this court finds that BWH’s failure to maintain Dylan’s medical records, pursuant to c. 111, §70, satisfies the fault requirement set forth in Gos v. Brownstein, supra.
C.
In addition to the constitutional requirements described in Gos v. Brownstein, supra, a review of cases from Massachusetts and other jurisdictions revealed several other factors that commonly appear.[9] Those factors include: (1) the extent to which the nonoffending party would be prejudiced by a lesser sanction; (2) whether the evidence is irreparably lost; (3) alternative or less drastic sanctions; (4) the policy favoring adjudication on the merits; and (5) the need to deter future litigants from similar abuses.
The first factor, prejudice to the nonoffending party, weighs heavily in favor of the plaintiffs. Without the judgment of default, the prejudice plaintiffs would be subjected to would be fatal. It is undisputable that the plaintiffs have a substantial need for the missing records. Without access to the missing records, there is no way for the plaintiffs to prove that the defendants acted negligently. Moreover, they would be irreparably harmed if they were denied the names of the doctors, nurses and other hospital personnel who were involved in the care and treatment of Dylan during the critical time period. Without access to these records, the plaintiffs cannot prosecute their action.
As of the last hearing on the motion, the hospital, despite commendable efforts, has failed to come up with the missing records. Moreover, there was no indication on its part, that the location of the records would be forthcoming. From the evidence presented to this court, the records appear to be irreparably lost.
In addition, no alternative or less drastic sanction is appropriate to remedy the harm suffered by the plaintiffs. As previously noted, the importance of the missing records is two-fold: first it will reveal whether the hospital was negligent in its failure to administer antibiotics to Dylan sooner than it did; secondly, it will reveal the identity of the doctors, nurses, and other hospital personnel who took part in the treatment and care of Dylan right after his birth. This court has previously determined that this information is vitally important to the plaintiffs’ case, as it is the only way they can attempt to prove the defendants were negligent.
With regard to the fourth factor, adjudication on the merits, it is a well settled principle that justice is better served by allowing opposing parties their day in court. By entering a default judgment against the hospital this court is, for all practical purposes, taking away the hospital’s ability to adjudicate the case on the merits. However, anything less than a default judgment would have the same result on the plaintiffs. It is undeniable that the Keene family has suffered a severe tragedy. No amount of money could begin to heal the pain and suffering they have endured for the past eleven years. However, without the court ordering the sanctions they seek, they would not be able to prove negligence on the part of the hospital, and even if they could, the damages they have suffered would greatly exceed the fixed sum they would receive. In short, anything less than what they seek, by way of sanctions, would effectively deny the plaintiffs their day in court.
Lastly, the imposition of the sanctions requested, would at the very least, put those with a statutory duty to maintain records on notice to take more responsibility in preserving those records.
II.
The plaintiffs also request that this court strike BWH’s charitable immunity special defense pursuant to Mass.R.Civ.P. 37(b)(2). Massachusetts General Laws Chapter 231, Section 85K provides that:
It shall not constitute a defense to any cause of action based on tort brought against the corporation, trustees of a trust, or members of an association that said corporation, trust, or association is or at the time the cause of action arose was a charity; provided, that if the tort was committed in the course of any activity carried on to accomplish directly the charitable purposes of such corpora-, tion, trust, or association, liability in any such cause of action shall not exceed the sum of twenty thousand dollars exclusive of interests and costs. Notwithstanding any other provision of this section, the liability of charitable corporations, the trustees of charitable trusts, and the members of charitable associations shall not be subject to the limitations *477 set forth in this section if the tort was committed in the course of activities primarily commercial in character even though carried on to obtain revenue to be used for charitable purposes.
G.L.c. 231, §85K (1985 ed. & supp. 1997).
The rationale behind the charitable immunity exemption was explained in Farrigan v. Pevear, 193 Mass. 147 (1906):
Among the reasons given for this exemption it has been said, that being a charitable institution rendering services to the public without pecuniary profit, if the property of tire charity was depleted by the payment of damages its usefulness might be either impaired or wholly destroyed, the object of the founder or donors defeated, and charitable gifts discouraged . . .
Id. at 149.
A.
There is no doubt that Mass.R.Civ.P. 37(b)(2)(C) provides this court the power to strike BWH’s charitable immunity affirmative defense.[10] In examining this issue, the court notes that no court'has stricken the charitable immunity affirmative defense for a violation of a discovery order. However, this is a situation where fairness and equity require the use of this discovery sanction.
The plaintiffs have suffered a severe tragedy. Dylan, now eleven years old, has been permanently brain damaged since birth. In prosecuting their claim, the plaintiffs have encountered an enormous road block. The medical records that would potentially prove negligence on the part of BWH, the doctors, the nurses or other hospital personnel are inexplicitly missing from Dylan’s medical record. Without these records the plaintiffs cannot ascertain which doctors, nurses, or hospital personnel were responsible for Dylan’s treatment and care.
With the liability of a charitable organization limited by statute, injured parties are forced to seek recovery from those parties directly at fault. See Mullins v. Pine Manor College, 389 Mass. 47, 63-64 (1983) (holding that the employee, the party directly at fault, may be held liable to the person harmed for the full amount of his loss). Here, the opportunity to recover from those individuals directly at fault has been eliminated by BWH’s failure to maintain the records. Thus, the plaintiffs, who are completely without fault, are placed in the unjust situation where their damages will be limited to $20,000.[11] Allowing BWH the benefit of the statutory cap provided in c. 231, §85K, when as a result of their negligence the plaintiffs are left without an adequate remedy is contrary to the principles of fairness, equity and justice.[12]
Additionally, the bailment principles regarding presumptions and burdens of proof are applicable by analogy. The principles of bailment require that once the bailor proves delivery to the bailee in good condition and the failure to redeliver upon timely demand, the burden of proof is irrevocably fixed upon the bailee to prove by a fair preponderance of the evidence that he has exercised due care to prevent to property’s loss or destruction. Knowles v. Gilchrist Co., 362 Mass. 642, 652 (1972). The Supreme Judicial Court stated that the burden of proof should rest on the party who is in the best position to determine what actually happened. Id. at 651.
BWH was in sole possession of the record or records now claimed to be missing. Analogizing to the principles of bailment, the burden now shifts to BWH to prove by a preponderance of the evidence that the loss of the missing record or records did not result from their negligence or fault. No evidence has been presented to this court showing that BWH was not negligent in the loss, misplacement or destruction of the missing records.
For the above mentioned reasons, this court finds that the principles of equity and bailment require this court to strike BWH’s charitable immunity affirmative defense.
ORDER
It is therefore ORDERED that the plaintiffs’ motion to default Brigham & Women’s Hospital and strike their charitable immunity affirmative defense, pursuant to Mass.R.Civ.P. 37(b)(2)(C), be ALLOWED.

 Dr. Hinkson provided prenatal care to Kathleen Keene while Dr. Furlong provided care to both Mrs. Keene and Dylan during the labor and delivery stages.

 At approximately 6:35 a.m. on May 15, 1986, a blood test was performed on Dylan indicating he contracted Beta He-molytic Streptococci Group B. No records can be found from that time through 12:00 a.m. on May 16, 1986.

 In his affidavit, Dr. Stephen I. Pelton stated that records which would have been created but which are missing from Dylan’s files, would include the following:
(1) Notes written by nurses in the regular care nursery. These notes would have reflected their observations of Dylan’s condition during the 20-hour missing record period including vital signs and description of color, feeding patterns, and activity level.
(2) Progress note(s) written by doctor(s), including HCHP doctor(s), making rounds and resident(s), or intern(s) who saw Dylan in the regular care nursery as a result of the plan that Dylan be ”watch[ed] for signs and symptoms of sepis.”
(3) Nurses notes written by the nurses in the NICU documenting their observations of Dylan’s condition and his treatment in the NICU during the missing records period (after 6:30 a.m.) on May 15, 1986.
(4) Doctors’ progress notes and doctors’ orders in the NICU on May 15, 1986.
In the affidavit of Susan Guihan, R.N., which was filed in open court on July 29, 1997, she indicates that most or all of this information would be recorded in the Kardex.

 Prior to the amended version of Mass.R.Civ.P. 37(b), two Appeals Court decisions of note dealt with discovery sanctions. In Edson & Son v. McConnell 9 Mass.App.Ct. 930 (1980), the lower court judge entered a default judgment as to liability and damages against the defendant because their responses to discovery requests had been so “consistently dilatoiy and incomplete . . .” Id. The Appeals Court upheld the default judgment as to liability but remanded the case back for an evidentiary hearing on the issue of damages. Id.
In Litton Business Telephone Systems, Inc. v. Schwartz, 13 Mass.App.Ct. 113 (1982), a default judgment was upheld because other sanctions were not appropriate and the judge found that the defendant willfully withheld relevant data. Id. at 118.

 In addition to those Massachusetts cases, a few Massachusetts Appellate Division decisions are worth mentioning. Both cases, however, are based upon Dist./Mun.Cts.R.Civ.P. Rule 37.
In Weinberg v. U.N.X. Chemicals, Inc., 1994 Mass.App.Div. 199 (1994), a judge ordered dismissal of the plaintiffs case for failure to comply with certain discovery orders. The plaintiff never responded to a request for production of documents and no explanation was given. Accordingly, the judge determined that the defendant’s ability to prepare for trial had been adversely impacted by the nondisclosure. Id. at 200.
In AT&T Universal Card Services Corp. v. Reynolds, 1996 Mass.App.Div. 219 (1996), the lower court entered a default judgment against the defendant for a “clear and willful violation” of a court order to supplement responses to interrogatories. Id. at 219. On appeal, the Massachusetts Appellate Division held that the lower court’s order for a default judgment as a discovery sanction exceeded the bounds of reasonableness. Id. at 224, citing Henshaw v. The Travelers Ins. Co., 377 Mass. 910, 911 (1979). Quoting from Diamond v. Hanover Ins. Co., 1994 Mass.App.Div. 200 (1994), the court stated that:
the proper penalty to be imposed in each case rests within the broad, but not unfettered discretion of the trial judge . . . Dismissal [or default] is clearly the most severe sanction which can be imposed for the violation of a discovery order, and should never serve as the penally of first resort. A trial court is not only authorized, but obligated, to consider conscientiously the utility of lesser, appropriate sanctions ... No dismissal [or default] entered without a prior, careful balancing of the competing interest of affording the [defendant] his day in court and of effectively preserving [the plaintiffs] right to necessary discovery . . . can ever be equated with a sound exercise of judicial discretion, (citations omitted).
AT&T Universal Card Services Corp., 1996 Mass. App. Div. at 221-22, quoting Diamond, 1994 Mass.App.Div. at 202. Accordingly, the court vacated the default judgment and remanded the case back to the trial court for a determination of “appropriate sanctions.”

 In another Second Circuit decision, the court affirmed the District Court’s conclusion that even if the plaintiffs failure to comply was not willful, but was, instead, a result of its gross or even simple negligence, sanctions may, nevertheless, be imposed. Argo Marine Systems, Inc. v. Camar Corp., 755 F.2d 1006, 1015 (2d Cir. 1985).

 See GNLV Corp. v. Service Control Corp., 900 P.2d 323 (Nev. 1995); Chrysler Corp. v. Blackmon, 841 S.W.2d 844 (Tex. 1992); Cincinnati ins. Co. v. Synergy Gas, Inc., 585 So.2d 822 (Ala. 1991); Pelletier v. Pathiraja, 519 A.2d 187 (Me. 1986); Pamplin v. Victoria, 909 P.2d 1245 (Or.Ct.App. 1996); Sponco Manufacturing, Inc. v. Alcover, 656 So.2d 629 (Fla.Dist.Ct.App. 1995); Rockwell International Corp. v. Menzies, 561 So.2d 677 (Fla.Dist.Ct.App. 1990); Caballero v. Montefiore Medical Center, 561 N.Y.S.2d 726 (N.Y.App.Div. 1990); Hirsch v. General Motors Corp., 628 A.2d 1108 (N.J.Super.Ct. Law Div. 1993).

 See State Farm Mut. Auto. Ins. Co. v. Colley, 871 P.2d 191 (Wyo. 1994); Williams v. Texaco, Inc., 165 B.R. 662 (D.N.M. 1994); Marshall v. F.W. Woolworth, Inc., 122 F.R.D. 117 (D. Puerto Rico 1988); Conway v. Dunbar, 121 F.R.D. 211 (S.D.N.Y. 1988).

 It is undisputed that plaintiffs’ damages are in excess of $20,000.

 That is particularly the case where, as here, the hospital and its doctors are insured by the same entity.