755 So.2d 721 (1999)
BUILDER'S SQUARE, INC., Appellant/Cross-Appellee,
v.
James SHAW, Appellee/Cross-Appellant.
No. 97-2710.
District Court of Appeal of Florida, Fourth District.
September 17, 1999.
*722 Robert H. Schwartz and Jonathan M. Matzner of Adorno & Zeder, P.A., Fort Lauderdale, for appellant/cross-appellee.
Michael G. Cooksey of Cooksey & Cooksey, P.A., Riviera Beach, and John T. Hyland, Denver, Colorado, for appellee/cross-appellant.

ON MOTION FOR CLARIFICATION, REHEARING AND REHEARING EN BANC
PER CURIAM.
Builder's Square has filed a motion for clarification, rehearing and rehearing en banc. Upon further reflection, we conclude that our comments critical of appellant's counsel were not well-taken and not supported by the record. As such, and based on the merits of Builder's Square's motions, we grant rehearing, withdraw our original opinion, and substitute the following in its place:
In this action, the plaintiff sought damages resulting from a fall from a ladder while he was employed at Builder's Square. At first, he sued the manufacturer in products liability and his employer in negligence relating to the use of the ladder. Later, after learning that the ladder had been destroyed, he amended his complaint to add a cause of action against Builder's Square for spoliation of evidence. At some point, he settled with the manufacturer for $250,000. He proceeded to trial against Builder's Square on his spoliation of evidence claim.
During trial, an issue arose as to the $250,000 settlement and its effect on the spoliation of evidence claim. Builder's Square argued that the fact and amount of the settlement were relevant and probative as to whether plaintiff was substantially impaired by the loss of the ladder in prosecuting his products liability claim against the manufacturer. The trial judge agreed that these settlement facts went to the existence of the cause of action for spoliation of evidence and disclosed them to the jury. At the same time, the trial judge refused the plaintiffs request to instruct the jury not to use the settlement amount in calculating the amount of damages.
There was trial testimony that plaintiff was never paid more than $6.50 per hour in wages by Builder's Square but that he had previously made as much as $12 hourly as a carpenter. A vocational economist testified as to future lost wages based on two models: one from plaintiffs earnings at Builder's Square; the other from his previous career as a carpenter. As to the Builder's Square model, the economist testified that he used an hourly rate of $8 in his calculations. As to the carpenter's *723 model, he testified that he used the $12 hourly rate adjusted upwards for inflation.[1]
During closing arguments, Builder's Square argued to the jury that the $8 per hour figure the economist used in the Builder's Square model was incorrect, since the evidence showed plaintiff never made over $6.50 per hour at Builder's Square. He argued that, because the hourly wage employed by the economist was incorrect, the judge and jury could not allow for any lost wages that would equate to an $8 per hour pay scale.
The jury returned a verdict in favor of the plaintiff. In an interrogatory verdict, the jury expressly decided on the spoliation of evidence claim that plaintiff had been substantially impaired on his products liability claim against the manufacturer as a result of Builder's Square's destruction of the ladder. As to lost future wages, the jury's award of such damages was based on an analysis involving an $8 per hour salary.
Builder's Square moved for a remittitur to $6.50 on the future wages, as well as a $250,000 setoff, in its post trial motions. It argued that the future wages award was based on a rate of $8 per hour rather than $6.50 and that there was no record evidence to support the hourly figure used by the jury. As to the setoff, it argued that without it the verdict would duplicate the settlement amount. The trial judge denied the remittitur but granted the setoff.
On appeal, Builder's Square raises several issues, but we find it necessary to address only two: (1) whether an employer is entitled to specific notice requesting preservation of evidence in order to be held liable for spoliation of evidence under section 440.39(7); and (2) whether the damages award for future lost wages is excessive. On cross appeal, along with another issue, plaintiff appeals the setoff. We affirm the trial court's ruling as to the sufficiency of the notice for preservation of the evidence and the refusal of the trial court to grant a remittitur or a new trial on the future lost wages; on the cross appeal, however, we reverse the trial court's grant of a setoff.

I.
Plaintiff was an employee of Builder's Square when he fell off the ladder. Under Florida's Workers Compensation law, an employer is generally entitled to immunity from tort claims by its employees if it has otherwise complied with the Workers Compensation law. See § 440.11, Fla. Stat. (1997). At the same time, an injured employee is permitted to maintain a claim against third parties whose negligence or intentional conduct may have contributed to or caused an injury. See § 440.39(1), Fla. Stat. (1997). The same statute imposes a duty, however, on an employer to cooperate with an employee in maintaining a claim against a third party. See § 440.39(7), Fla. Stat. (1997). An employer's duty of cooperation with an employee in the maintenance of a suit against a third party includes a duty to preserve evidence critical to the suit. See General Cinema Beverages of Miami Inc. v. Mortimer, 689 So.2d 276 (Fla. 3d DCA 1995). One of the reasons the employer is obligated to cooperate with the injured employee's pursuit of a third party tort action is that the employer is entitled to recoup some of the compensation benefits paid from the employee's third party judgment or settlement. § 440.39(2), Fla. Stat. (1997).
In this case, Builder's Square argues that an employee must make a definite request to the employer to preserve specific, identified evidence before an employer may be held liable on a spoliation of *724 evidence claim. See General Cinema, 689 So.2d at 279 ("This must necessarily include a duty to preserve evidence, at least where, as here, there has been a timely request for preservation [emphasis supplied].") We think Builder's Square reads the statute too narrowly.
The facts in this case show that plaintiff notified his employer on the date of the injury that he had slipped or fallen from one of the ladders used in the store. Builder's Square argues that because it had 12 ladders on the premises that day, and that plaintiff did not specifically identify which ladder was involved, it had insufficient notice to charge it with a duty to preserve evidence.
The evidence shows that Builder's Square knew on the day of the incident or within 3 days thereafter that one of its ladders was actually involved in the fall. Before it proceeded to dispose of any of them, the statutory duty of cooperation with its injured employee should certainly have suggested that it consult with the employee. We think that while actual notice of identified evidence is the clearest form, an employer can similarly be charged with notice when the circumstances are such that it should have known that certain evidence could conceivably be critical to an employee's claim. The failure of Builder's Square to consult with plaintiff before disposing of the ladder could have been understood by the jury as a violation of the duty to preserve. Thus, we agree that plaintiff presented a jury question as to the sufficiency of the notice.

II.
Builder's Square then argues that the jury's verdict on damages represents an implicit but clear rejection of the model using the previous earnings as a carpenter for calculating future lost wages. We disagree. Lost earning capacity is intended not to merely compensate for the loss of the wage that was being earned at the time of the injury, but also, for lost wages that the injured party was capable of earning. In this regard, there is no requirement that the jury had to choose either the amount that plaintiff had earned at Builder's Square or the amount that he had earned as a carpenter. Rather, it was free to pick any figure between the two, including $8 per hour. The fact the jury decided to award plaintiff an amount based on an analysis using an $8 per hour salary at Builder's Square does not make the award any less valid as a compromise of the jurors. The evidence clearly supports this figure, and it will not be set aside. See Tobias v. Osorio, 681 So.2d 905 (Fla. 4th DCA 1996).

III.
On cross appeal, plaintiff argues that it was error for the trial judge to permit the fact and amount of the settlement with the manufacturer to be disclosed to the jury. He bases his argument on section 768.041 which states in pertinent part that:
"(1) A release or covenant not to sue as to one (1) tortfeasor for ... personal injury of ... any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort....
"(2) At trial, if any defendant shows the court that the plaintiff ... has delivered a release or covenant not to sue to any person, ... in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.
"(3) The fact of such a release or covenant not to sue ... shall not be made known to the jury." [emphasis supplied]
For our purposes, the key words from the statute are "for the same tort" and "of the damages sued for." The issue turns on whether the tort for spoliation of evidence against Builder's Square is the same tort within the meaning of the statute as the *725 products liability claim against the manufacturer and whether the damages sued for under spoliation of evidence were the same as those sued for in the products liability claim.
This court has joined the Third District in recognizing that the tort of spoliation of evidence exists in Florida. St. Mary's Hospital v. Brinson, 685 So.2d 33 (Fla. 4th DCA 1996); Brown v. City of Delray Beach, 652 So.2d 1150 (Fla. 4th DCA 1995); Sponco Mfg., Inc. v. Alcover, 656 So.2d 629 (Fla. 3d DCA 1995), rev. dismissed, 679 So.2d 771 (Fla.1996); Continental Ins. Co. v. Herman, 576 So.2d 313 (Fla. 3d DCA 1990), rev. denied, 598 So.2d 76 (Fla.1991); Miller v. Allstate Ins. Co., 573 So.2d 24 (Fla. 3d DCA 1990), rev. denied, 581 So.2d 1307 (Fla.1991); Bondu v. Gurvich, 473 So.2d 1307 (Fla. 3d DCA 1984), rev. denied sub nom. Cedars of Lebanon Hosp. Care Ctr., Inc. v. Bondu, 484 So.2d 7 (Fla.1986). In St. Mary's, we adopted the Third District's "characterization of this tort's necessary elements." 685 So.2d at 35; Herman, 576 So.2d at 315.
We recognize that there are no cases in Florida deciding whether a spoliation of evidence claim is the same tort for the same damages as the underlying products liability claim that has been affected by the deprivation of crucial evidence. But see Hertz Corp., v. Hellens, 140 So.2d 73 (Fla. 2d DCA 1962) (§ 768.041 applies to all tortfeasors, whether joint or several, including vicarious tortfeasors). From the very nature of the spoliation claim, however, it would appear to us that the damages in a spoliation claim are derivative of the damages in a products liability claim whose viability has been spoiled by the loss of critical evidence. Hence, we conclude that, only for purposes of section 768.041, the spoliation claim is the same tort for the same damages as the underlying products liability claim substantially impaired by the loss of the ruined evidence.
Section 768.041(3) provides that "[t]he fact of ... a release or covenant not to sue ... [a joint tortfeasor] shall not be made known to the jury." From our discussion of the spoliation claim, we conclude that under section 768.041 the spoliator is properly deemed a joint tortfeasor with the defendant in the products liability claim. Clearly, therefore, it was improper under the statute for the court to allow the fact of the settlement as well as its amount to be disclosed to the jury. We thus reject Builder's Square's argument that the settlement was admissible as to whether the claim against the manufacturer was substantially impaired by the destruction of the ladder. Under the statute, the remedy is to set off the amount of the settlement against the award in the spoliation action.
The problem in this case is that, over the objection of the plaintiff, the $250,000 settlement was disclosed to the jury, and the trial court then refused to instruct the jury not to consider the settlement in awarding damages. Plaintiff argues that the jury should be presumed to have adjusted the award of damages in light of the settlement whose amount was disclosed to them. We agree with the Third District that the disclosure to a jury of a settlement with another tortfeasor ordinarily should be deemed prejudicial. In Balsera v. A.B.D.M. & P. Corp., 511 So.2d 679 (Fla. 3d DCA 1987), the court stated that "[a]bsent any evidence to the contrary, we must assume that the jury considered this testimony in reaching its verdict, and therefore find that the trial court correctly refused to set off the verdict with these same payments." 511 So.2d at 681; see also Leisure Group, Inc. v. Williams, 351 So.2d 374 (Fla. 2d DCA 1977). Likewise, in this case, we assume that the jury used the settlement in fixing damages and, thus, hold the trial judge erred in granting the setoff for the amount of the settlement.
Accordingly, we remand to the trial court for consistent proceedings.
*726 POLEN and TAYLOR, JJ., concur.
FRUSCIANTE, JOHN A., Associate Judge, concurs in part and dissents in part with opinion.
FRUSCIANTE, JOHN A., Associate Judge, concurring in part and dissenting in part.
Although this judge agrees with the majority's legal conclusions, I offer the following opinion incorporating a dissent as to certain matters.
To begin, the presentation in the Motion for Clarification, Rehearing and Rehearing En Banc regarding the calculation of the future loss of earning capacity of James Shaw is nothing more than a reargument of the points originally presented. This is in direct contravention to Goter v. Brown, 682 So.2d 155 (Fla. 4th DCA 1996), which was recognized by the Appellant as its guiding light in a motion for rehearing. The quoting of the plaintiff's expert's trial testimony and the charting out of that testimony vs. the decision made by the jury can only be considered reargument and, as such, should not be addressed in a motion for rehearing. Certainly, the charting out is a very clear way of presenting Appellant's argument to this Court. However, I assure the Appellant that we understood this argument from the words alone that were presented in its original brief. Therefore, this particular issue should not be addressed in a motion for rehearing.
The Appellant still fails to present a case that the jury was not free to pick any figure between the lower hourly rate with Builder's Square and the higher rate as a carpenter. Even if that figure coincides with an analysis that is not fully accurate, the jury can choose it. This is not a situation as we might find in a family law case regarding the valuation of a business. In such a matter, a trial judge cannot hear two experts give support for different valuations and arbitrarily choose one in the middle. Any such middle figure would have to be supported by the trial judge with appropriate findings of fact. This jury had no such restriction placed upon it.
What is still disappointing to this judge is that the trial counsel brought out the specific error about the hourly rate to the jury and appellant never mentioned in its brief that trial counsel did so. Its argument is much more plausible if we were to believe for one minute that the jury failed to pick up on the hourly-rate mistake in the expert's analysis. However, counsel not only drove that point home to the jury in closing argument, but made great note of it in the cross examination of that witness as well. Once again, I am troubled by appellate counsel's reluctance to accept finality regarding this issue.
What is much more worthy of a motion for rehearing is the point raised by appellant that our original opinion stated "[f]irst of all, the instructions requested by Shaw would have avoided this entire issue on appeal. Builder's Square rejected it and now seeks relief from this court for the consequences that have resulted from that decision." (emphasis added). This wording clearly allows for a reader to believe that Builder's Square was seeking affirmative relief on this issue when in fact it was Mr. Shaw who was doing so. In hindsight, we should change the wording of the phrase "seeks relief from this court for the consequences that have resulted from that decision" to "seeks to avoid the consequences that have resulted from that decision." Let it be clear, however, that this Court was never under the impression that Builder's Square was seeking affirmative relief on this point.
Appellant's Motion for Rehearing fails to provide a reason why that simple instruction requested by the plaintiff[2] should have been objected to by trial counsel. I *727 would concur with our original opinion to the extent that there is no legally logical reason to avoid giving that instruction to the jury. It would have automatically avoided the very issue we now face on appeal. Without the instruction, the defense allows for the possibility that the jury might reduce their overall verdict by the $250,000 when they submitted to this court in their Reply/Cross-Answer Brief (without a cite to the record) that "the trial court did not permit counsel for Builder's Square to ask the jury for a reduction in the amount of the settlement with Tri-Arc...." Trial counsel for Builder's Square even planted the seed in the jury's mind that the $250,000 could be raised to a significantly higher amount based upon time and interest figures given by plaintiff's expert. Without the instruction, the defense further allows for the possibility that, if by any chance the jury does not rule in their favor, they can still argue for a reduction by $250,000 of any amount the jury arrives at (which they have done). All of this extra hearing and appellate time could easily have been avoided by giving the instruction. Is this good and appropriate trial advocacy utilized by a fine attorney in his zealous advocacy for his client, or is it one of the distasteful "tricks of the trade" that allows for unnecessary criticism of the legal profession? I leave it to the conscience of the individual attorney to draw the line but would submit that our profession does not need, nor should it accept, an argument that fails to establish a legally sufficient and appropriate benefit for the client. The mere fact that a jury may have a chance to be confused is to this judge neither legally sufficient nor appropriate, no matter how many times it may have been done in the past. It is part of what creates a negative public image of our profession. In this day of such strong talk about professionalism, we should be looking to set a new and higher standard of what we should tolerate as zealous advocacy on the part of an attorney.
Let us move now to the fact that the jury was even given the $250,000 settlement figure by the trial judge. I agree with the majority opinion that the $250,000 setoff should be reversed. However, I make the following remarks.
Spoliation of evidence is a unique tort. I believe in essence the plaintiff is saying, "I have a case that is worth × number of dollars and because you spoiled my evidence, I can't get that amount." If there are multiple tortfeasors in the original action and one of them settles, further complications can occur. Does the plaintiff still pursue an action against the remaining tortfeasor, assuming no Workers Compensation immunity is implicated? What if the remaining tortfeasor is the one that has lost essential evidence? Now, the plaintiff must decide which of two separate torts he wants to pursue. Or, does he pursue both? If spoliation of evidence is pursued, how does he tell a jury that he didn't get enough money from one of the original tortfeasors that did settle if the jury does not know how much was received from that settling tortfeasor? I would submit that if a claim of spoliation of evidence is pursued and a settlement was made with one of the original tortfeasors in the underlying action, the jury needs to know how much the settlement was for in order to determine what, if any, loss was incurred by the plaintiff. This would be a clear exception to the well-accepted rule that such settlements are never divulged to juries. Such a scenario is before this court.
Accordingly, I would not take exception to the trial judge's decision to inform the jury of the $250,000 settlement with Tri-Arc, but I would submit that Florida Statutes section 768.041 simply does not apply under the facts of this case. The spoliation of evidence claim is a separate and distinct tort from the underlying products liability case. Therefore, any verdict the jury would render would not be subject to a setoff.
If we accept the theory of the majority regarding the spoliation count being derived from the products liability count and being in essence, the same tort, we arrive at the same equitable conclusion. We *728 should then accept the fact that the spoliation of evidence count would not have existed "but for" the initial products liability count. As such, the total of both counts should not exceed the maximum amount which could have been obtained from the products liability count. Since the jury was not read the instructions offered by the plaintiff, we should not speculate that they automatically determined an amount which duplicated the dollars awarded the plaintiff by Tri-Arc. The Appellant should not receive a windfall from its decision to argue against the instruction.
I must now come back to trial counsel's statement to this court that "the trial court did not permit counsel for Builder's Square to ask the jury for a reduction in the amount of the settlement with Tri-Arc...." Counsel would have this court believe that the trial judge specifically told him not to ask the jury for a reduction. In actuality, this statement is based upon an interpretation counsel has made of what he believes is the applicable law. Such interpretations are clearly distinct from what a judge may or may not permit an attorney to do. This judge remains offended that counsel attributes words of restriction to a trial judge when, in fact, there is no evidence such words were ever uttered. Accordingly, I find our initial opinion which had comments critical of the quote was well taken and should not be retracted.
NOTES
[1] The expert witness testified that the lost earnings analysis predicated upon plaintiff's employment as a carpenter assumed a wage of $16 per hour. The witness acknowledged that the plaintiff had indicated to him that the most he had ever earned as a carpenter was $12.50 per hour, but explained that the $16 per hour figure reflected the "1997 dollar value" of those earnings.
[2] "Also, do not make any reduction to account for Mr. Shaw's negotiated settlement with Tri-Arc Manufacturing Company, Inc. The court in entering judgment will make the appropriate reductions in the damages awarded."