835 So.2d 1251 (2003)
Ronna MARTINO and Raymond Martino, her husband, Appellants,
v.
WAL-MART STORES, INC., an Arkansas corporation, Appellee.
No. 4D01-2693.
District Court of Appeal of Florida, Fourth District.
January 29, 2003.
*1252 Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., and Steven W. Halvorson of Schuler & Halvorson, P.A., West Palm Beach, for appellants.
Brent F. Bradley of Kinsey, Troxel, Johnson & Walborsky, P.A., and Jeffrey P. Gill of Vernis & Bowling of Northwest Florida, P.A., Pensacola, for appellee.
STEVENSON, J.
While shopping at a Wal-Mart store, Ronna Martino was allegedly injured when her shopping cart collapsed. This appeal stems from the entry of a directed verdict in favor of Wal-Mart Stores, Inc., on the Martinos' negligence claims and dismissal of the Martinos' spoliation of evidence claim. We reverse the directed verdict on the negligence claims, but affirm the dismissal of the spoliation of evidence claim.

The Proceedings Below
Ronna and Raymond Martino filed suit against Wal-Mart Stores, Inc., alleging that Ronna Martino was injured on March 1, 1997, while at a Wal-Mart on State Road 7 in Royal Palm Beach. According to the complaint, Mrs. Martino was in the check-out line and a cashier asked her to lift up a bag of water softener salt so that the cashier could scan the price code. Mrs. Martino placed the bag of salt on top *1253 of the shopping cart, but the cart collapsed, injuring her hand. Initially, the Martinos claimed only that Wal-Mart was negligent in its inspection and maintenance of the store's shopping carts (the "negligent maintenance" theory) and in failing to properly train store employees regarding appropriate procedures for scanning and customer handling of heavy items (the "negligent mode of operation" theory). When Wal-Mart could produce neither the shopping cart nor a security video that may have recorded the accident, the Martinos added a claim against Wal-Mart for spoliation of evidence.

The Dismissal of the Spoliation Claim
In their second amended complaint, the Martinos attempted to state a distinct cause of action for spoliation of evidence (count III) predicated upon allegations that Wal-Mart's loss of and/or failure to preserve the shopping cart and video tape impaired the Martinos' ability to prevail in the negligence claims stated in count I. Prior to trial, Wal-Mart sought dismissal of the spoliation claim, arguing that one of the elements of a cause of action for spoliation of evidence is a legal or contractual duty to preserve the evidence and that Wal-Mart owed no such duty to the Martinos. The trial court granted Wal-Mart's motion and dismissed the spoliation of evidence claim.
The spoliation of evidence count of the complaint alleged that: (1) on the same day that Mrs. Martino was injured, she informed Wal-Mart's assistant manager of the accident and that an incident report was prepared; (2) she requested that the manager retrieve and preserve the security video that may have recorded the incident; (3) when Mrs. Martino returned to the store after receiving medical treatment, she observed the cart in the parking lot where she had left it and advised the assistant manager of this fact; and (4) just two days after the incident, Wal-Mart's risk management service took her statement. The Martinos contend that these facts were sufficient to put Wal-Mart on notice that litigation was likely and that such notice created a duty to preserve the items.
This district first recognized a cause of action for spoliation of evidence in St. Mary's Hospital, Inc. v. Brinson, 685 So.2d 33 (Fla. 4th DCA 1996)(on rehearing). There, during surgery, a child received an increased amount of anesthesia, suffered cardiac arrest, and, ultimately, died. The child's parents brought a negligence action against the hospital, the surgeon, and the surgeon's professional association. The plaintiffs reached a settlement with the surgeon and the surgeon's professional association, leaving only the negligence claim against St. Mary's. During discovery, it was learned that the anesthesia machine used during the surgery had been disassembled by the machine's manufacturer. When the child's parents discovered the machine's condition, they added a claim against St. Mary's for the negligent or intentional destruction of the machine, alleging that St. Mary's knew of the parents' potential claim against the manufacturer, that the hospital had a duty to preserve the machine, and that their failure to preserve the machine had significantly impaired the parents' ability to prove their cause of action against the manufacturer.
In St. Mary's Hospital, Inc., the court adopted the elements of a spoliation claim set forth in Continental Insurance Co. v. Herman, 576 So.2d 313, 315 (Fla. 3d DCA 1990):
(1) existence of a potential civil action, (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action, (3) destruction of that evidence, (4) significant impairment in the ability to prove the lawsuit, (5) a causal relationship between the evidence *1254 destruction and the inability to prove the lawsuit, and (6) damages.
Wal-Mart argues that the dismissal was correct because, in order to state a claim for spoliation of evidence, the "duty" to preserve the item in question must be shown by contract, agreement, statute or administrative regulation. See, e.g., Builder's Square, Inc. v. Shaw, 755 So.2d 721, 723-24 (Fla. 4th DCA 1999)(finding that worker's compensation statute imposed on employer a duty to preserve evidence), review denied, 751 So.2d 1250 (Fla.2000); Brown v. City of Delray Beach, 652 So.2d 1150, 1153 (Fla. 4th DCA 1995)(finding that duty to preserve could arise as result of officer's repeated promises); Cont'l Ins. Co. v. Herman, 576 So.2d 313, 315 (Fla. 3d DCA 1990)(finding that duty to preserve arose as result of agreement); Bondu v. Gurvich, 473 So.2d 1307 (Fla. 3d DCA 1984)(finding a duty to preserve as result of administrative regulations). But see Hagopian v. Publix Supermarkets, Inc., 788 So.2d 1088 (Fla. 4th DCA 2001)(implicitly recognizing a retail establishment's duty to preserve evidencea broken bottlein the absence of any contract, statute or administrative regulation), review denied, 817 So.2d 849 (Fla.2002).
Irrespective of the duty issue, we find that the Martinos' spoliation of evidence claim suffers from a fundamental flaw. Here, the Martinos allege that Wal-Mart's failure to preserve evidence has impaired their ability to prevail in the very negligence claim they have brought against Wal-Mart. These facts raise an issue that this district has never squarely addressedwhether an independent cause of action for spoliation of evidence is proper when the defendant in the spoliation claim is also the defendant in the underlying claim allegedly impaired by the loss or destruction of the evidence.
The California Supreme Court recently wrestled with this question in Cedars-Sinai Medical Center v. Superior Court, 18 Cal.4th 1, 74 Cal.Rptr.2d 248, 954 P.2d 511 (1998), and concluded that the answer is "no." In Cedars-Sinai, a medical malpractice suit was brought against the hospital and others after an infant suffered oxygen deprivation during birth. The defendant hospital was unable to locate some of the records, including the fetal monitoring strip that recorded the infant's heartbeat during labor. As a result, a claim was added for intentional spoliation of evidence. Noting that some of the state's lower courts had recognized an independent cause of action for spoliation of evidence, see Willard v. Caterpillar, Inc., 40 Cal.App.4th 892, 48 Cal.Rptr.2d 607 (1995), and Smith v. Superior Court, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984), the California Supreme Court accepted review for the express purpose of deciding whether the state should recognize a tort remedy for the intentional destruction of evidence by one who is a party to the underlying actiona so-called "first party spoliator." See Cedars-Sinai, 74 Cal. Rptr.2d 248, 954 P.2d at 513.
While the court condemned the destruction of evidence, it believed that this was not reason enough to create tort liability for the conduct. The court noted that, historically, California's courts favored remedying litigation-related conduct with sanctions, including the presumption that evidence destroyed by a party would have been unfavorable to that party, monetary fines, contempt, exclusion of evidence, striking of pleadings, and even entry of default judgmentsall authorized by California's rules of civil procedure. The court then cited the California Bar's disciplinary sanctions for attorneys who participate in the spoliation of evidence and the penal laws making it a crime to destroy evidence. Having addressed the adequacy of the remedies already in place to address the wrong, the court turned its attention to the *1255 pitfalls in adopting an independent cause of action in the first party spoliator context. Paramount among the court's concerns were the speculative nature of the harm and damages, and the potential for abuse. "`A new cause of action could accrue each time a plaintiff loses a lawsuit, for in most cases there is likely to be some piece of potential evidence that is not available at the time of trial.'" Id. at 519 (quoting Comment, Spoliation of Evidence: A Troubling New Tort, 37 U. KAN. L.REV. 563, 592 (1989)).
The California Supreme Court is not alone in its concerns. A number of jurisdictions have refused to recognize an independent cause of action for spoliation where the spoliator is the defendant in the underlying litigation, finding that remedies like sanctions and adverse evidentiary presumptions are adequate to address the problem. See, e.g., Sweet v. Sisters of Providence in Wash., 895 P.2d 484, 493 (Alaska 1995); Goff v. Harold Ives Trucking Co., 342 Ark. 143, 27 S.W.3d 387 (2000); Lucas v. Christiana Skating Ctr., Ltd., 722 A.2d 1247 (Del.Super.Ct.1998); Monsanto Co. v. Reed, 950 S.W.2d 811, 815 (Ky.1997); Miller v. Montgomery County, 64 Md.App. 202, 494 A.2d 761, 768 (1985); Oliver v. Stimson Lumber Co., 297 Mont. 336, 993 P.2d 11, 17 (1999); Trevino v. Ortega, 969 S.W.2d 950 (Tex.1998).
There are, of course, courts that have arrived at the contrary conclusion, finding that an independent cause of action for spoliation of evidence will lie even where the spoliator is a defendant to the underlying litigation. One of our sister courts falls into this latter group. In Bondu v. Gurvich, 473 So.2d 1307 (Fla. 3d DCA 1984), the first Florida case to recognize a cause of action for spoliation of evidence, the spoliator was a defendant in the underlying action. There, Dave Bondu underwent by-pass surgery. During the administration of anesthesia, Bondu suffered cardiac arrest and died. Bondu's wife sued the hospital, the Florida Patients' Compensation Fund, and the anesthesiologists. In count VIII of her complaint, Mrs. Bondu alleged that the hospital was negligent per se for failing to provide her with requested medical records as required by statute and that such failure had frustrated her ability to prove her case. In count IX, she alleged that the hospital had intentionally interfered with her cause of action in that it "purposely and intentionally lost and/or destroyed" anesthesiology records. Id. at 1310. Counts VIII and IX were dismissed for failure to state a cause of action. The Third District reversed, finding that Mrs. Bondu's claim that the hospital's failure to keep and maintain records had rendered her unable to prove her malpractice claim against the hospital and others was cognizable.
As authority for adopting the cause of action, the Third District cited the California cases of Williams v. California, 34 Cal.3d 18, 192 Cal.Rptr. 233, 664 P.2d 137 (1983), and Smith v. Superior Court, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984) [later overruled by Cedars-Sinai]. The panel recognized that in those cases the spoliator was not a defendant in the underlying litigation, but reasoned that "[i]f, as in Williams and Smith, an action for failure to preserve evidence or destruction of evidence lies against a party who has no connection to the lost prospective litigation, then, a fortiori, an action should lie against a defendant which, as here, stands to benefit by the fact that the prospect of successful litigation against it has disappeared along with the crucial evidence." Bondu, 473 So.2d at 1312.[1]
*1256 Despite the decision in Bondu, having now squarely confronted the issue, we side with those courts that have held that an independent cause of action for spoliation of evidence is unnecessary and will not lie where the alleged spoliator and the defendant in the underlying litigation are one and the same. Many of the reasons advanced by the California Supreme Court in Cedars-Sinai have equal application in Florida. For example, here, too, the rules governing attorneys prohibit the obstruction of a party's access to evidence and the destruction, concealment or alteration of evidence. See R. Regulating Fla. Bar 4-3.4. And, in Florida, any number of sanctions and negative consequences are available against parties to litigation. Chief among these sanctions are the adverse evidentiary inferences and adverse presumptions found in the case law. See Pub. Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla.1987); Anesthesiology Critical Care & Pain Mgmt. Consultants, P.A. v. Kretzer, 802 So.2d 346 (Fla. 4th DCA 2001); Amlan, Inc. v. Detroit Diesel Corp., 651 So.2d 701, 703 (Fla. 4th DCA 1995); N.H. Ins. Co. v. Royal Ins. Co., 559 So.2d 102, 103 (Fla. 4th DCA 1990). Like these many other jurisdictions, we believe that the adverse inferences and the myriad of other available sanctions adequately remedy the wrong suffered by the plaintiff as the result of the loss of the evidence. Consequently, we hold that where the spoliator is also the defendant in the underlying cause of action, the plaintiff cannot maintain a cause of action against that defendant for spoliation of the evidence. As the result of our holding, we certify conflict with Bondu.

The "Negligent Maintenance" Theory
At the outset of trial, the Martinos' attorney recognized that, without the shopping cart, his clients would be unable to prove that Ronna Martino's injuries resulted from the negligent maintenance of the shopping cart. The Martinos' counsel, however, argued that Wal-Mart's failure to produce the shopping cart and video tape had two possible consequences. First, citing Amlan, Inc. v. Detroit Diesel Corp., 651 So.2d 701 (Fla. 4th DCA 1995), and New Hampshire Insurance Co. v. Royal Insurance Co., 559 So.2d 102 (Fla. 4th DCA 1990), counsel asserted that the failure to produce the cart created an inference that evidence regarding the cart's condition would have been unfavorable to Wal-Mart, asking for a jury instruction of like effect. Second, citing Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla.1987), counsel argued that Wal-Mart's failure to produce the cart served to shift the burden of proof, creating a rebuttable presumption of negligence. The trial court rejected both arguments, finding that entitlement to both forms of relief required that Wal-Mart have a duty to preserve the evidence and this issue was decided adversely to the Martinos when the spoliation of evidence claim was dismissed for lack of such a duty. In fact, the judge went so far as to state that he would instruct the jury to draw no inferences from the absence of the cart. At the close of the Martinos' case, the trial court declined to reconsider his ruling and directed a verdict in favor of Wal-Mart on the negligent maintenance theory.
On appeal, the Martinos do not challenge the court's refusal to give either the requested adverse inference instruction or the burden of proof shifting presumption of negligence instruction formulated in Valcin. Rather, the Martinos argue that the entry of the directed verdict was improper in view of the cases which allow for an adverse inference, unfavorable to the *1257 party failing to produce evidence, to be taken where there is destruction or unexplained disappearance of crucial evidence. See Amlan, Inc., 651 So.2d at 703; N.H. Ins. Co., 559 So.2d at 103. Indeed, these principles formed the basis for the Valcin decision, but as appellants recognize, the presumption of negligence instruction in Valcin was predicated on the health care provider's failure to maintain required medical records. See Valcin, 507 So.2d at 600.
We agree with appellants that a proper consideration of the "adverse inferences" which may arise when a party fails to produce pertinent evidence within its control required that the negligent maintenance claim in this case be presented to the jury. Unlike the presumption of negligence which may arise under Valcin, the adverse inference concept is not based on a strict legal "duty" to preserve evidence. Rather, an adverse inference may arise in any situation where potentially self-damaging evidence is in the possession of a party and that party either loses or destroys the evidence. Cf. N.H. Ins. Co., 559 So.2d at 103 (stating that "where a party fails to produce evidence within his control, an adverse inference may be drawn that the withheld evidence would be unfavorable to the party failing to produce it"). Mrs. Martino testified that she "pointed out" where her cart was in the parking lot and requested that the assistant manager save both the cart and the video tape. If Mrs. Martino's testimony were believed, the jury could have inferred that the condition of the cart and the actions depicted on the video would have been unfavorable to Wal-Mart. See Valcin; Amlan, Inc.; N.H. Ins. Co. This "adverse inference" may have led the jury to find that Mrs. Martino's claim was valid. Thus, the Martinos' are entitled to a new trial on their claim that Wal-Mart negligently maintained its shopping carts.[2]

The "Negligent Mode of Operation" Theory
The supreme court's decision in Wells v. Palm Beach Kennel Club, 160 Fla. 502, 35 So.2d 720 (1948), was one of the first to recognize a "method or mode of operation" theory of negligence, which did not require proof of actual or constructive knowledge on the part of the defendant. In Wells, however, the plaintiff suffered injuries while at a dog track and the decision was predicated, in part, on the nature of the business establishment. Consequently, after Wells, the question that arose was whether such a theory of liability applied to more traditional places of business. At the time that this case was tried, there were decisions from both this district and the First District that a plaintiff could not pursue a negligent "mode of operation" theory to establish liability in a foreign substance, supermarket slip and fall case. See Soriano v. B & B Cash Grocery Stores, Inc., 757 So.2d 514, 516-17 (Fla. 4th DCA 1999); Rowe v. Winn-Dixie Stores, Inc., 714 So.2d 1180 (Fla. 1st DCA 1998). Wal-Mart argued that these cases served to bar the Martinos' negligent "mode of operation" theory of liability. The trial court accepted this argument and entered the directed verdict that the Martinos now challenge.
Following the trial of this case, the supreme court decided Owens v. Publix Supermarkets, Inc., 802 So.2d 315, 332 (Fla. 2001), which overruled both Rowe and Soriano and recognized the "continued viability" *1258 of such "mode of operation" theory of liability. In its answer brief, Wal-Mart concedes that the supreme court's decision in Owens would allow the Martinos "to proceed under a negligent mode of operation theory," but argues that this was not the law prior to Owens and that the supreme court expressly limited the effect of its opinion to "all cases commenced after the decision becomes final and those cases already commenced, but in which trial has not yet begun." Id. at 331. The Martinos acknowledge that the Owens decision does not apply to their case. They contend, however, that this is not dispositive of the issue as theirs is not a foreign substance, supermarket slip and fall case and the law prior to Owens, and at the time the trial court entered the directed verdict, permitted them to pursue a negligent mode of operation theory of liability. We find merit in the Martinos' position. Well before the Owens decision, outside of the context of foreign substance, supermarket slip and fall cases, Florida's courts have applied a "mode of operation" theory of liability to premises liability cases. See, e.g., Brisson v. W.T. Grant Co., 79 So.2d 771 (Fla.1955); Fontana v. Wilson World Maingate Condo., 717 So.2d 199 (Fla. 5th DCA 1998). Since, contrary to the trial court's ruling, the law did permit the Martinos to pursue their "mode of operation" theory of negligence, we reverse the directed verdict in favor of Wal-Mart on this issue and remand for further proceedings.
AFFIRMED in part, REVERSED in part, and REMANDED.
WARNER and HAZOURI, JJ., concur.
NOTES
[1] We reject appellants' argument that our opinion in Strasser v. Yalamanchi, 783 So.2d 1087 (Fla. 4th DCA), review denied, 805 So.2d 810 (Fla.2001), can be read as recognizing an independent cause of action for spoliation where the spoliator is a defendant in the underlying action. While this was a "fact" of the litigation, it was not a contested legal issue resolved by the court.
[2] We note, however, that while counsel is free to make arguments concerning the adverse inference created by Wal-Mart's failure to produce the shopping cart and videotape, a jury instruction on this matter is not appropriate. See Jordan ex rel. Shealey v. Masters, 821 So.2d 342, 346-48 (Fla. 4th DCA 2002).