908 So.2d 342 (2005)
Ronna MARTINO, et al., Petitioners,
v.
WAL-MART STORES, INC., Respondent.
No. SC03-334.
Supreme Court of Florida.
July 7, 2005.
Philip M. Burlington of Caruso, Burlington, Bohn and Compiani, P.A., and Steven *343 W. Halvorson of Schuler and Halvorson, P.A., West Palm Beach, FL, for Petitioner.
Rosemary B. Wilder of Marlow, Connell, Valerius, Abrams, Adler and Newman, Coral Gables, FL, for Respondent.
David J. Sales of Searcy, Denney, Scarola, Barnhart and Shipley, West Palm Beach, FL, on behalf of George R. Harper, III d/b/a Rusty Harper Ferneries; Robert Stone d/b/a Robert Stone Ferneries; L. Charles Herring d/b/a H & H Greens; Lars Hagstrom and Lorna Jean Hagstrom d/b/a Lars Hagstrom Partnership; Lars Hagstrom d/b/a Lars Hagstrom Ferneries; T. Larry Jones, Inc.; Morris Hagstrom and Fred Weston d/b/a Hagstrom and Weston Ferneries; Morris Hagstrom and Lars Hagstrom d/b/a Hagstrom and Hagstrom Ferneries; Morris A. Hagstrom d/b/a Morrris A. Hagstrom Ferneries; Sunstate Ferneries, Inc.; Robert I. Stokes and Phillip A. Stokes d/b/a Richfern Growers; Albin Hagstrom and Son, Inc.; Raiford G. Hagstrom d/b/a Raiford G. Hagstrom Ferneries; Hugo R. Massy d/b/a Hugo R. Massy Ferneries; Richard Hagstrom, d/b/a Richard Hagstrom Ferneries; Dean Hagstrom d/b/a Dean Hagstrom Ferneries; Geneva Herring d/b/a Lemuel C. Herring Ferneries; Superior Greens, SA; Paradise Greens, SA; Helechos Ornamentales La Margarita, SA; Inversiones La Mara, SA; Helechos Ornamentales de San Isidro, SA; Corporacion Lums, SA; Agritica, SA; Paraiso Verdes, SA; Haciendo Rio Puries, SA; Fine Foliago Production; Jack B. Shuman d/b/a Shuman Farms; Steve Shuman d/b/a Steve Shuman Greens; Joann Burnsed d/b/a Lane Burnsed Ferneries; Donaldson Ornamentals, Inc.; R. Scott Jones d/b/a High Point Farms; Jones Brothers Ferneries; Helechos de Paraiso, SA; Verdes de Perfecta Calidad, SA; Stacy Jones d/b/a Stacy Jones Ferneries; Norma Jones d/b/a Ronald Jones Ferneries; Frank E. Underhill, Jr. and Jean F. Underhill d/b/a/ Underhill Ferneries; Terry Taylor Enterprises, Inc.; James O. Taylor, Co., Inc.; US Fern, SA; Estate of Patricia Richardson c/o F.A. Ford, Jr.; O. Freeman Greenlund, Jr. d/b/a Freeman Greenlund Ferneries; Robert F. Greenlund d/b/a Robert F. Greenlund Ferneries; David G. Dreggors; John Flowers; Greg James Ferneries, Inc.; James Baldauff and Patricia S. Baldauff d/b/a J & P Properties; James Martin d/b/a James Martin Ferneries; Michael E. Ott d/b/a Manor Way Ferns; James and Scarlett Warner d/b/a James K. Warner Ferneries: Thomas J. Lawrence, Jr., and Estate of Thomas J. Lawrence, Sr., d/b/a T.J. Enterprises; Sunridge, Inc.; Lawrence Farms, Inc.; Harold Dwayne Cohen and Carol Lynn Cohen d/b/a Cohen Foliage; Brian Foxx and Kent Foxx d/b/a Foxx Fernery; Fancy Foliage, Inc.; Robin C. Lennon and Wanda G. Lennon d/b/a Central Florida Foliage; Robert Harper d/b/a Robert Harper Ferneries; Helechos Poliforma, S.A.; Helechos Internacionales, S.A.; Helechos Expreso, S.A.; Helechos Tropicales, S.A.; Marsell, S.A.; Proyectos de Desarrollo de Fraijanes, S.A.; Finco Los LLanos de Ciruelas, S.A.; Finca D.J. SA; Plantas Ornamentales de Guanacaste, S.A.; Florida Helechos, S.A.; Helechos de Costa Rica, S.A.; A y H Helechose, SA; Helechos de Oro, SA; Foliage Incorporado, SA; Helechos de Poas, S.A.; Fernexport, SA; Costa Rican Flower Corporation, SA; American Flower Shippers, Inc.; American Flower Corporation, SA; Flowertree Nursery, Inc.; Botanics Wholesale, Inc., as successor in interest to J.W.M., Inc., d/b/a Botanics Wholesale and Foliage Co-Op, Inc.; Full Bloom Farms, LLC., f/k/a Lovell Farms, Inc., Fred Henry Paradise Orchid; Paul M. Booker, Jr.; Green Acres Fernery and Citrus, Inc.; Lake Harris Greens, Inc. d/b/a Green Acres Fernery and Citrus, Inc., Tree Factory, Inc., Rivers Foliage, Inc., Greenleaf Folliage, *344 Inc., G & B Nursery, Inc., Weeks, d/b/a Weeks Farm, Jamaican Floral Experts LTD., Kim's Nursery, Inc., Continental Wholesale Florist, Inc., KHD, LTD.,; William Keebler, Coconut Orchids, Inc.; and Sagaert Orchids, Inc., as Amici Curiae.
Roy D. Wasson, Miami, FL, on behalf of Academy of Florida Trial Lawyers as Amicus Curiae.
Tracy Raffles Gunn and Ceci Berman of Fowler, White, Boggs and Banker, P.A., and James E. Tribble, Tallahassee, FL, on behalf of Florida Defense Lawyers' Association as Amicus Curiae.
PER CURIAM.
We have for review the decision in Martino v. Wal-Mart Stores, Inc., 835 So.2d 1251 (Fla. 4th DCA 2003), which certified conflict with the decision in Bondu v. Gurvich, 473 So.2d 1307 (Fla. 3d DCA 1984). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.

FACTS
In March 1997, petitioner Ronna Martino (Martino) went to a Wal-Mart store in Royal Palm Beach. In addition to other items, Martino placed two forty-pound bags of salt in her shopping cart. When checking out, Martino placed all of her items except the bags of salt on the counter for the cashier. According to Martino's testimony, the cashier then asked Martino to lift up the bags of salt so that the cashier could scan the price code. Martino attempted to comply with the cashier's request, placing one bag of salt on the top of the shopping cart where a child would sit. As she placed the salt on top of the shopping cart, the cart collapsed, and Martino injured her arm. Martino then completed the sale and went home.
Martino testified that once she returned home, she called the Wal-Mart store and asked to speak to the manager. Her call was answered by the assistant manager, who advised her to go to the hospital to have her arm checked and then return to Wal-Mart to fill out an incident report. Martino testified that during the conversation with Wal-Mart's assistant manager, Martino informed him where he could find the shopping cart in the parking lot.
After her visit to the hospital, Martino returned to Wal-Mart and filled out an incident report. Martino testified that while she was at the store, she showed the assistant manager where the shopping cart was in the parking lot and requested that he obtain the videotape of the incident from the surveillance camera inside the store.
Thereafter, on August 26, 1999, Martino brought an action against Wal-Mart, alleging that Wal-Mart was negligent in its inspection and maintenance of the store's shopping carts (the "negligent maintenance" theory) and in failing to properly train store employees regarding appropriate procedures for scanning and customer handling of heavy items (the "negligent mode of operation" theory). Martino's husband also asserted a claim for loss of consortium.
During discovery, Martino requested the shopping cart and a copy of the video surveillance tape. When Wal-Mart could not produce either item, Martino filed a second amended complaint, alleging a separate claim for spoliation of evidence. Wal-Mart thereafter filed a motion to dismiss Martino's claim for spoliation of evidence, asserting that Martino's complaint failed to state a cause of action because Martino failed to allege ultimate facts indicating that Wal-Mart had a legal or contractual duty to preserve the evidence. The trial court granted Wal-Mart's motion *345 to dismiss Martino's spoliation claim on the basis that Wal-Mart had no contractual or statutory duty to preserve the evidence.
The case then proceeded to trial on Martino's negligence claims.[1] Prior to the presentation of evidence, Martino argued that she was entitled to a jury instruction on the inference of negligence because of Wal-Mart's failure to preserve the evidence. The trial court rejected Martino's argument and ruled that Martino was not entitled to an inference of negligence based on the spoliation of evidence. The trial court granted Wal-Mart's motion for directed verdict.
Martino appealed the trial court's decision to the Fourth District Court of Appeal, arguing that (1) the trial court erred in granting Wal-Mart's motion to dismiss Martino's spoliation-of-evidence claim; (2) the trial court erred in granting a directed verdict in Martino's negligent maintenance claim because there was an adverse inference that the shopping cart and videotape would have been unfavorable to Wal-Mart that should have been drawn from Wal-Mart's failure to produce the shopping cart and videotape; and (3) the trial court erred in granting a directed verdict on the negligent mode of operation claim.
With respect to the first claim, the Fourth District framed the issue to be:
Here, the Martinos allege that Wal-Mart's failure to preserve evidence has impaired their ability to prevail in the very negligence claim they have brought against Wal-Mart. These facts raise an issue that this district has never squarely addressed  whether an independent cause of action for spoliation of evidence is proper when the defendant in the spoliation claim is also the defendant in the underlying claim allegedly impaired by the loss or destruction of the evidence.
Martino, 835 So.2d at 1254. The Fourth District concluded that when the defendant who allegedly caused the spoliation of evidence is also the defendant who allegedly committed the underlying tort causing injury or damages, the plaintiff cannot maintain a cause of action against that defendant for damages on the basis of spoliation of evidence.
The Fourth District certified conflict with Bondu, in which the Third District Court of Appeal held that a first-party[2] spoliation of evidence cause of action was cognizable under Florida law. 473 So.2d at 1313. The relief sought by Bondu was the right to maintain a spoliation action against a hospital for the hospital's negligent loss of medical records because that loss allegedly kept Bondu from being able to maintain a medical malpractice action against the hospital and others. The district court recognized that this tort previously had not been identified but concluded that the hospital had both *346 an administrative and a statutory duty to maintain and furnish Bondu's medical records, and held:
Since Mrs. Bondu alleges that this duty was breached by the hospital when it failed to furnish Mr. Bondu's records to her, and that this breach caused her damage in that she lost "a medical negligence lawsuit when [she] could not provide expert witnesses," her complaint states a cause of action.
Id. In the instant case, the Fourth District stated:
Despite the decision in Bondu, having now squarely confronted the issue, we side with those courts that have held that an independent cause of action for spoliation of evidence is unnecessary and will not lie where the alleged spoliator and the defendant in the underlying litigation are one and the same.
Martino, 835 So.2d at 1256. In reaching its decision, the Fourth District relied upon the California Supreme Court decision in Cedars-Sinai Medical Center v. Superior Court, 18 Cal.4th 1, 74 Cal. Rptr.2d 248, 954 P.2d 511 (1998). In Cedars-Sinai, the California court rejected cases from lower California appellate courts which had approved a first-party spoliation cause of action. One of the cases Cedars-Sinai overruled was Smith v. Superior Court, 151 Cal.App.3d 491, 198 Cal.Rptr. 829 (1984), which had been relied upon by the Third District in Bondu.
On issue two, Martino's negligent maintenance claim, the Fourth District agreed with Martino that a proper consideration of the "adverse inferences" which may arise when a party fails to produce pertinent evidence within its control required that the negligent maintenance claim in this case be presented to the jury. On issue three, Martino's negligent mode of operation claim, the Fourth District also agreed with Martino that the trial court erred in directing a verdict on behalf of Wal-Mart.

ANALYSIS
In this opinion, we only consider the issue on which conflict was certified: whether an independent cause of action should exist for first-party spoliation of evidence. We addressed a similar issue in Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla.1987).
In Valcin, the plaintiff sued the defendant hospital for, inter alia, its negligent performance of a sterilization procedure. The Third District found that "the lack of an `operative report' by the surgeon in Valcin's file impaired the expert's ability to determine whether the operation had been performed with due care," and thus Valcin had been hindered in proving a prima facie case of negligence against the defendant hospital. Id. at 597. The Third District created a set of presumptions which were to apply so that the plaintiff could still maintain the negligence action against the defendant despite the absence of this key evidence. If the defendant demonstrated that the loss of evidence was only negligent, a rebuttable presumption that the defendant was negligent in the underlying action was to apply. If the loss was intentional, however, a conclusive, irrebuttable presumption of negligence was to be entered against the defendant. Id. at 598.
On appeal, this Court held that "the rules fashioned by [the district] court sweep wider than necessary." Id. at 599. First, we held that when evidence was intentionally lost, misplaced, or destroyed by one party, trial courts were to rely on sanctions found in Florida Rule of Civil Procedure 1.380(b)(2) and that "a jury could well infer from such a finding that the records would have contained indications of negligence." Id.; see Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983) (willful *347 violation of trial court's discovery order justified imposition of harsh sanction of default judgment against noncomplying party). If the loss of the evidence was determined to be negligent, the Third District's rebuttable presumption of negligence for the underlying tort applied. However, we clarified that the presumption only applied when "the absence of the records hinders [the plaintiff's] ability to establish a prima facie case." Id. This rebuttable presumption shifted the burden of proof under section 90.302(2), Florida Statutes (1985), so that the presumption "is not overcome until the trier of fact believes that the presumed [negligence] has been overcome by whatever degree of persuasion is required by the substantive law of the case." Id. at 600-01 (quoting Caldwell v. Division of Retirement, 372 So.2d 438, 440 (Fla.1979)).
Interestingly, the Third District released its decisions in Valcin and Bondu, the case certified for conflict with the instant case that recognized an independent cause of action for spoliation of evidence, on the same day, June 5, 1984, and denied rehearing in both cases on the same day, August 20, 1985. Though they dealt with substantially the same issue, these two cases were distinguishable because of the plaintiffs' different forms of requested relief from summary judgment. In order to avoid summary judgment, Bondu attempted to amend her complaint against the hospital to add a spoliation of evidence claim and had also filed a separate cause of action for spoliation. She was denied leave to amend her complaint in the first case, and a judgment on the pleadings was entered against her in the separate action. In Valcin, the plaintiffs were simply appealing from a summary judgment of the underlying tort action against the hospital.
The Third District did not note this distinction between the two cases in deciding that in Bondu there was a cause of action and in Valcin there was a presumption which was to be applied in the underlying action. We did not review the Third District's decision in Bondu or reference the Bondu decision in our opinion in Valcin. Now that we consider whether the remedy against a first-party defendant for spoliation of evidence should be the Valcin presumption and sanctions, if found to be necessary, or an independent cause of action, we decide in favor of the Valcin presumption and sanctions. Martino has not demonstrated that there is any need to change our reliance on the Valcin presumption and instead recognize an independent cause of action for first-party spoliation of evidence. We disapprove Bondu to the extent that it conflicts with this decision.
In sum, for reasons stated in this opinion, we approve the Fourth District's dismissal of the cause of action for spoliation of evidence. This case is remanded to the district court for further proceedings consistent with this opinion.
It is so ordered.
WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs specially with an opinion, in which BELL, J., concurs.
PARIENTE, C.J., recused.
WELLS, J., specially concurring.
I concur with the majority's opinion and reasoning in affirming the Fourth District Court of Appeal's decision that there is no separate cause of action against a first-party defendant for spoliation of evidence. In instances in which it is demonstrated that a first-party defendant has a duty by reason of statute, regulation, court order, or discovery rule to maintain and preserve *348 evidence, I believe this Court has already decided that the presumption from Public Health Trust of Dade County v. Valcin, 507 So.2d 596, 601 (Fla.1987), or sanctions should be used by the trial court. No separate cause of action, therefore, should be found to exist.
However, in the instant case, I believe that in addition to the decision that no cause of action exists, there should be no use of the Valcin presumption or sanctions because Wal-Mart had no duty to maintain or preserve the cart or videotape. In this case there was no statute or regulation which required Wal-Mart to preserve the evidence. Suit was not filed for two years after the incident at the Wal-Mart store, and during that two-year period, no court order or discovery rule required Wal-Mart to maintain or preserve the cart or videotape.
For this reason, I disagree with the majority's decision not to decide the related issue of whether the Fourth District Court of Appeal's decision to reverse the trial court's directed verdict for Wal-Mart on the negligent maintenance theory was proper. I would decide that issue and quash the decision of the Fourth District.
It is fundamental to the entire legal basis for spoliation of evidence that the owner or possessor of property have a legally defined duty to maintain or preserve the property. Both Valcin and Bondu v. Gurvich, 473 So.2d 1307 (Fla. 3d DCA 1984), clearly recognized as their foundation the statutory and regulatory duty to maintain hospital records. Unless there is a legally defined duty, I believe that presumptions or sanctions against owners or possessors of property for spoliation of evidence have serious due process concerns under both the United States and Florida Constitutions. See U.S. Const. amend. V & XIV; art. I, § 9, Fla. Const. Both constitutions expressly protect the freedom to use property, and this necessarily includes the freedom to dispose of property, unless there is a legally defined duty requiring maintenance or preservation of the property.
One law review article succinctly stated the importance of the existence of a duty to maintain evidence in these situations:
Regardless of whether a separate cause of action is recognized or whether spoliation remedies are limited to presently existing alternatives, the first issue that must be addressed in any analysis is whether a duty exists on the part of the possessor to preserve or maintain the evidence. Without such a duty, there can be no valid legal basis for the imposition of sanctions, much less the striking of pleadings or the award of damages. Likewise, without a clear delineation of the parameters of the duty to preserve evidence, one cannot determine whether they are subjecting themselves to liability by cleaning up a spilled substance on a grocery store's floor, moving a damaged car off the road, or disposing of a broken chair.
Robert D. Peltz, The Necessity of Redefining Spoliation of Evidence Remedies in Florida, 29 Fla. St. U.L.Rev. 1289, 1320 (2002). The Supreme Court of Kansas made the point in Koplin v. Rosel Well Perforators, Inc., 241 Kan. 206, 734 P.2d 1177, 1181-82 (1987):
Appellant urges that this court should not hesitate to adopt the new tort or any other new remedy whenever a person suffers loss at the hands of a "wrongdoer." The problem with this argument is that, absent a duty to preserve the T-clamp, appellee is not a wrongdoer and had an absolute right to preserve or destroy its own property as it saw fit.
It appears to me that the district court in its decision in the instant case attempts *349 to skirt Wal-Mart's lack of duty by making an erroneous distinction between a Valcin presumption and an "adverse inference." The district court made the following remarkable statement:
Unlike the presumption of negligence which may arise under Valcin, the adverse inference concept is not based on a strict legal "duty" to preserve evidence. Rather, an adverse inference may arise in any situation where potentially self-damaging evidence is in the possession of a party and that party either loses or destroys the evidence. Cf. [New Hampshire Ins. Co. v. Royal Ins. Co., 559 So.2d 102, 103 (Fla. 4th DCA 1990)].
Martino, 835 So.2d at 1257. I have carefully read the Fourth District's earlier decision in New Hampshire Insurance Co., to which it cites, and I do not find a basis for the above statement in that case. Nor have I found any other authority for that statement. To the contrary, New Hampshire Insurance Co. had to do with the failure to produce an insurer's underwriting file in an instance in which the court had ordered the underwriting file to be produced. The Fourth District expressly held in that case that Valcin provided the remedy. The Fourth District in that case in no way dispensed with the duty basis for the Valcin presumption, sanctions, or adverse inferences.
I understand that there is a real need by those who are injured to have evidence preserved so that claims can be pursued. I recognize that the freedom to use property should be tempered by this need. However, just as tort claims have duty as a fundamental element, so must any presumptions, sanctions, or adverse inferences arising from failure to maintain or preserve property have duty as a basis. This Court has historically only recognized such a duty when there is a statute, regulation, court order, or discovery rule which provides the duty. Valcin, 507 So.2d at 601; Mercer v. Raine, 443 So.2d 944, 945 (Fla. 1983).
This is an exceedingly important issue which should be confronted by this Court. Businesses as well as individuals must have regular record and property disposition policies. Obviously, storage space, both in warehouses and in computers, have finite limits. Practically, what was Wal-Mart to do when it was notified by Martino in March 1997? Was Wal-Mart to take the cart out of service? Was Wal-Mart to store the cart? How many warehouses would it take to store all of the property involved for the four-year statute of limitations period when Wal-Mart receives a notice of a possible claim?[3]
*350 I believe these problems are highlighted in this case by the fact that Wal-Mart was notified of the incident in March of 1997, but suit was not filed until August of 1999. From March of 1997 until August of 1999, there was no duty by reason of statute, regulation, court order, or discovery rule to maintain or preserve this property. There is no legal basis upon which to impose a Valcin presumption, sanction, or adverse inference when suit is filed two years after an incident because a putative defendant did not preserve the property for those two years. Making Wal-Mart subject to any of these measures in this situation causes very serious constitutional and practical concerns and issues, and frankly, is unfair and wrong.
BELL, J., concurs.
NOTES
[1] The parties agreed to a bifurcated trial on the issues of liability and damages.
[2] First-party spoliation claims are claims in which the defendant who allegedly lost, misplaced, or destroyed the evidence was also a tortfeasor in causing the plaintiff's injuries or damages. These actions are contrasted with third-party spoliation claims, which occur when a person or an entity, though not a party to the underlying action causing the plaintiff's injuries or damages, lost, misplaced, or destroyed evidence critical to that action. See Miller v. Allstate Ins. Co., 573 So.2d 24 (Fla. 3d DCA 1990). The plaintiff attempts to recover for the loss of a probable expectancy of recovery against the first-party tortfeasor. Humana Worker's Comp. Servs. v. Home Emergency Servs., Inc., 842 So.2d 778, 781 (Fla.2003). It is important to note that in this decision we are not considering whether there is a cause of action against a third party for spoliation of evidence. Our present decision is limited to claims for spoliation of evidence against first-party defendants.
[3] An article concerning spoliation issues in the electronics age explains this problem:

At some point, society must be willing to cut back on the search for truth to take account of other values the litigation matrix serves, including the utilitarian concern for efficiency, the need to preserve the procedural-substantive balance, and the need to provide predictable standards of primary behavior. An absolute strict liability retention standard, triggered by the mere potential of suit, would severely threaten attainment of all three goals.
For commercial enterprises that face the constant threat of litigation, adoption of such a standard effectively would mean that the enterprise would be required to constantly review its backup tapes for documents that could, at some later point in the litigation process, be deemed relevant; and if the enterprise predicted incorrectly, it would risk imposition of severe sanctions. The expense of such a process could easily prove prohibitive, because it would require the devotion of an enormous and unending number of person-hours, by knowledgeable individuals, to complete a careful review of unorganized backup tapes. Yet the only realistic alternative to such a burden would be a policy of total retention indefinitely  a practice that, given the geometric increases in document volume in the electronic age, could lead to the physical overrunning of a company with electronic equipment and severe retrieval burdens if and when the documents actually were needed in litigation. These are difficulties never faced in the age of pre-electronic storage. Yet to this point, at least, few courts seem willing to consider the possible need to adjust spoliation standards. The need for such a reconsideration is well at hand.
....
Although reasonable debate is possible over which moment should trigger the duty to preserve  the moment of a discovery request or the moment of a discovery order  it should be clear that any earlier point in the litigation process would be inadvisable. Use of any earlier demarcation point could lead to unlimited and chaotic disruption of electronic recordkeeping, as well as to the imposition of unfair and unpredictable standards of behavior on defendants. If defendants were obligated to preserve documents the moment they became aware that a suit might be filed, large companies that regularly face the possibility of suit would be required constantly to disrupt their normal practices, presumably adopted because of their efficiency, merely because a suit was threatened. Nor is the time of filing a complaint a more appropriate demarcation point for the obligation to preserve electronically stored evidence, again because the disruption for industries regularly subject to suit could be enormous.
Martin H. Redish, Electronic Discovery and the Litigation Matrix, 51 Duke L.J. 561, 623-25 (2001) (footnotes omitted).